Richard L. Schwartz (TX Bar No. 17869500)
rschwartz@whitakerchalk.com
**WHITAKER, CHALK, SWINDLE & SAWYER LLP**
301 Commerce Street, Suite 3500
Fort Worth, TX 76102-4186
Telephone:  (817) 878-4186
Fax:  (817) 878-0501

Daniel Rapaport (Bar No. 67217)
drapaport@wendel.com
Corie A. Edwards (Bar No. 184042)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, CA  94607-4036
Telephone:  (510) 834-6600
Fax:  (510) 834-1928

Attorneys for Defendant and Counter-Claimant
Swanson Semiconductor Services, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| REID-ASHMAN MANUFACTURING, INC., a California Corporation , <br><br> Plaintiff, <br><br> vs. <br><br> SWANSON SEMICONDUCTOR SERVICE, LLC, a Texas limited liability company, <br><br> Defendant. | Case No.  C 06-04693 JCS <br><br> **OPPOSITION TO MOTION TO STRIKE AFFIRMATIVE DEFENSES, DISMISS COUNTERCLAIMS AND FOR MORE DEFINITE STATEMENT** <br><br> Date:           March 9, 2007 <br> Time:           1:30 p.m. <br> Courtroom:  15 <br> Judge:          Honorable Joseph C. Spero |
| AND RELATED COUNTER-CLAIM. | |

*Wendel, Rosen, Black & Dean LLP*
*1111 Broadway, 24th Floor*
*Oakland, CA  94607-4036*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................... 1

II.    ARGUMENT ..................................................................................... 1

     A.     Standard to Apply on Motions to Strike or Dismiss ............................... 1
     B.     Right to File an Amended Pleading ................................................... 2
     C.     Affirmative Defenses Sufficient ...................................................... 2
     D.     "Information and Belief" Allegations Sufficient as Amended ................... 3
     E.     Rule 9(b) Complaints Satisfied in Amended Pleading ........................... 4
     F.     "Bad Faith" Adequately Pled ......................................................... 4
     G.     RAM Has Violated § 43(a) of the Lanham Act ................................... 5
     H.     Counterclaims Not Preempted ........................................................ 5
     I.     Tort Claims Are Adequately Pled in Amended Pleading ........................ 7

         1.     Tortious Interference with Prospective Economic Advantage .................. 7

         2.     Slander Per Se ......................................................................... 8

         3.     Trade Libel or Business Disparagement ........................................... 9

     J.     RAM's Out of Court Statements Are Not Protected by the Litigation Privilege Because They Were Made with Malice .............................. 10
     K.     California Litigation Privilege Does Not Require Dismissal of Counterclaims ........................................................................ 11

III.    CONCLUSION & PRAYER FOR RELIEF .......................................... 17

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

*OPPOSITION TO MOTION TO STRIKE AFF*
*IRMATIVE DEFENSES, DISMISS COUNTERCLAIMS -*    - i -
*Case No. C 06-04693 JCS*

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

**CASES**

*Ashlar Inc. v. Structural Dynamics Research Corp.*,
    No. C-94-4344 WHO; 36 U.S.P.Q.2d (BNA) 1402 (N.D. Cal. June 23, 1995)
    (Orrick, J.), *aff'd per curiam w/o opin.*, 124 F.3d 228 (Fed. Cir. 1997), ....................... passim

*Atlantic Mutual Insurance Co. v. J. Lamb, Inc.*,
    100 Cal. App. 4th 1017; 123 Cal. Rptr. 2d 256 (2002) ......................................... 10

*Babbitt v. Albertson's Inc.*,
    No. C-92-1883 SBA (PJH); 1993
    U.S. Dist. LEXIS 18801 at *5 (N.D. Cal. Jan. 28, 1993). .............................. 10, 16

*Baker v. IBP, Inc.*,
    357 F.3d 685 (7th Cir.), *cert. denied*, 543 U.S. 956 (2004). .................................... 5

*Bonneville Power Admin. v. FERC*,
    422 F.3d 908 (9th Cir. 2005). ........................................................................ 3

*BriteSmile, Inc. v. Discus Dental, Inc.*,
    No. C 02-03220 JSW; 2005 U.S. Dist. LEXIS 30855 (N.D. Cal. Nov. 18,
    2005) ........................................................................................................ passim

*Cabrera v. Martin*,
    973 F.2d 735 (9th Cir. 1992) ......................................................................... 4

*Center for Legal Advocacy v. Hammons*,
    323 F.3d 1262 (10th Cir. 2003) ...................................................................... 11

*Christian v. Preferred Acc. Ins. Co.*,
    89 F. Supp. 888 (N.D. Cal. 1950). ................................................................. 10

*Competitive Technologies v. Fujitsu Ltd.*,
    286 F. Supp. 2d 1118 (N.D. Cal. 2003), *appeal dismissed* 374 F.3d 1098 (Fed.
    Cir. 2004) .......................................................................................... 3, 12, 16

*Cunningham v. Simpson*,
    1 Cal. 3d 301; 461 P.2d 39; 81 Cal. Rptr. 855 (1969). .................................... 9, 10

*Day v. City of Fontana*,
    25 Cal. 4th 268; 19 P.3d 1196; 105 Cal. Rptr. 2d 457 (2001) ............................. 14

*Douglas v. Janis*,
    43 Cal. App. 3d 931; 118 Cal. Rptr. 280 (1974). .............................................. 8, 9

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    362 F.3d 1367 (Fed. Cir. 2004) ................................................................. 4, 5, 6

*Greenfield v. America West Airlines, Inc.*,
    No. C 03-05183 MHP; 2004 U.S. Dist. LEXIS 23163 at *16 (N.D. Cal.
    Nov. 16, 2004) ............................................................................................ 13

*Hart v. McLucas*,
    535 F.2d 516 (9th Cir. 1976). ......................................................................... 2

*Horwich v. Superior Court of Los Angeles County*,
    21 Cal. 4th 272; 980 P.2d 927; 87 Cal. Rptr. 2d 222 (1999) .............................. 15

*LeDuc v. Kentucky Central Life Insurance Co.*,
    814 F. Supp. 2d 820 (N.D. Cal. 1992) ............................................................ 11

*Meridian Project Systems, Inc. v. Hardin Construction Co., LLC*,
    404 F. Supp. 2d 1214 .............................................................................. passim

ii

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989)................................................................................ 2

*Nichols v. Great American Insurance Cos.*,
   169 Cal. App. 3d 766; 215 Cal. Rptr. 416 (1985)............................................. 10

*Pacific Gas and Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126; 791
   P.2d 590 n. 2, 270 Cal.Rptr. 1 (1990), . .................................................. 7, 12, 13

*Rainsong Co. v. Federal Energy Regulatory Commission*,
   151 F.3d 1231 (9th Cir. 1998), *cert. denied*, 528 U.S. 811 (1999)....................... 2

*Randolph v. IMBS, Inc.*,
   368 F.3d 726 (7th Cir. 2004)............................................................................. 5

*Rothman v. [Michael] Jackson*,
   49 Cal. App. 4th 1134; 57 Cal. Rptr. 2d 284 (1996)............................... 14, 15, 16

*Sacks v. Office of Foreign Assets Control*,
   466 F.3d 764 (9th Cir. 2006)......................................................................... 3, 14

*Sebastian International, Inc. v. Russolillo*,
   128 F. Supp. 2d 630 (C.D. Cal. 2000) ..................................................... passim

*In re Secure Computing Corp. Securities Litigation*,
   184 F. Supp. 2d 980 (N.D. Cal. 2001) ............................................................ 3, 4

*Shahvar v. Superior Court of Santa Clara County*,
   25 Cal. App. 4th 653, 30 Cal. Rptr. 2d 597 (1994)............................................ 15

*Sharper Image Corp. v. Target Corp.*,
   425 F. Supp. 2d 1056 (N.D. Cal. 2006) ........................................................... 13

*United States v. Carter*,
   421 F.3d 909 (9th Cir. 2005)...................................................................... 11, 13

*Vegod Corp. v. American Broadcasting Cos., Inc.*,
   25 Cal. 3d 763; 603 P.2d 14; 160 Cal. Rptr. 97, 101 (1979),
   *cert. denied*, 449 U.S. 886 (1980) .................................................................... 9

*Visto Corp. v. Sproqit Technologies, Inc.*,
   360 F. Supp. 2d 1064 (N.D. Cal. 2005) ....................................................... 8, 16

*Zenith Electronics Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999).......................................................................... 6

**STATUTES**

15 U.S.C. § 1117 ...................................................................................... 5, 12

15 U.S.C. § 1125(a) ...................................................................... 5, 8, 10, 12

35 U.S.C. § 271 ................................................................................................ 5

35 U.S.C. § 282 ................................................................................................ 2

Cal. Civ. Code § 47 .............................................................................. passim

Cal. Civ. Code § 46 ......................................................................................... 8

Rule 8, Federal Rules of Civil Procedure......................................................... 4

Rule 9(b), Federal Rules of Civil Procedure .................................................. 11

Rule 12(b), Federal Rules of Civil Procedure .................................... 2, 5, 10, 16

Rule 15(a), Federal Rules of Civil Procedure .................................................. 2

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

*OPPOSITION TO MOTION TO STRIKE AFFIRMATIVE
DEFENSES, DISMISS COUNTERCLAIMS -
Case No. C 06-04693 JCS*

- iii -

1

2

### OPPOSITION TO MOTION TO STRIKE DEFENSES
### AND TO DISMISS COUNTERCLAIMS

3    Counterclaimant Swanson Semiconductor Service, LLC ("Swanson") opposes the Motion

4   of Plaintiff, Reid-Ashman Manufacturing, Inc. ("RAM"), to strike Swanson's affirmative

5   defenses and to dismiss its counterclaims, for the reasons set forth in the Memorandum below.

6   Swanson is herewith filing its First Amended Answer to Complaint; Affirmative Defenses;

7   Counterclaims ("Amended Pleading"), which, *inter alia*, cures whatever deficiencies that may

8   have existed in the original Answer, if any *arguendo*.

9

10

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
### OF OPPOSITION TO MOTION TO STRIKE DEFENSES AND TO DISMISS
### COUNTERCLAIMS

11   **I.      INTRODUCTION**

12    RAM's Motion is without merit.  First, it has in large measure been mooted by Swanson's

13   new pleading ("Amended Pleading") filed concurrently herewith.  Second, as amended the

14   Affirmative Defenses are properly pled.  Third, Swanson clarifies that its unfair competition

15   claim is brought under § 43(a) of the Lanham Act.  Fourth, there is no patent preemption of state

16   law claims if the patent claim is a sham.  Fifth, the elements of all tort claims have been

17   adequately pled and do not impinge upon the California Litigation Privilege.  Sixth, the California

18   Litigation Privilege is preempted as to the Lanham Act claim and does not cover malicious efforts

19   to disrupt relations with third parties based upon spreading reports of sham litigation claims or

20   independent comments outside of the litigation.

21   **II.     ARGUMENT**

22        **A.      Standard to Apply on Motions to Strike or Dismiss.**

23    Because the motion to strike the affirmative defenses goes to (a) legal sufficiency and

24   (b) adequacy of the factual specificity thereof, the standard of review is the same as for the

25   motion to dismiss the counterclaims.  That standard is as follows:  "[I]t is axiomatic that the

26   Motion to Dismiss for failure to state a claim is viewed with disfavor and is rarely granted."

27   *Sebastian International, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 633 (C.D. Cal. 2000) (citation

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1   omitted).  "When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations

2   in the complaint [counterclaim] as true and construe them in the light most favorable to the non-

3   moving party.  ...  Therefore, a court must not dismiss a complaint for failure to state a claim

4   unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

5   which would entitle him to relief."  *Id.* at 633-34 (citations omitted).  *Accord*, *Meridian Project*

6   *Systems, Inc. v. Hardin Construction Co*., *LLC*, 404 F. Supp. 2d 1214, 1218-19; 2005-2 Trade

7   Cas. (CCH) P74,986 (E.D. Cal. 2005) (same; also, "the plaintiff need not necessarily plead a

8   particular fact if that fact is a reasonable inference from facts properly alleged").

9   **B.      Right to File an Amended Pleading.**

10      "Where plaintiff's complaint should be dismissed for failure to state a claim, the plaintiff

11   should be given 'at least one chance to amend the complaint' under Fed. R. Civ. Proc. 15(a)

12   before dismissing the action with prejudice."  *Sebastian* at 633 (cite omitted).  *Cf. Moore v.*

13   *Kayport Package Express, Inc.*, 885 F.2d 531, 537; 14 Fed. R. Serv. 3d (Callaghan) 765 (9th Cir.

14   1989) ("strong policy permitting amendment") (citation omitted).  Of course, in this case, since

15   no responsive pleading has been filed, there is an automatic right to amend under Rule 15(a).

16   Counterclaimant herewith files an Amended Pleading.

17   **C.      Affirmative Defenses Sufficient.**

18      The defenses Swanson relies upon are statutory.  "'Of course, in the construction of ...

19   statutes, it is presumed that every phrase serves a legitimate purpose and, therefore, constructions

20   which render [statutory] provisions superfluous are to be avoided.'  *Hart v. McLucas*, 535 F.2d

21   516, 519 (9th Cir. 1976).'  *Rainsong Co. v. Federal Energy Regulatory Commission*, 151 F.3d

22   1231, 1234 (9th Cir. 1998), *cert. denied*, 528 U.S. 811 (1999).

23      Here the statute states: "The following shall be defenses in any action involving the

24   validity or infringement of a patent and shall be pleaded:  (1) Noninfringement, absence of

25   liability for infringement or unenforceability, [and] (2) Invalidity of the patent or any claim in suit

26   on any ground specified in part II of this title . . .."  35 U.S.C. § 282.  Further in that section,

27   specific pleadings are required *as to certain defenses*, but *not* as to the balance.  In and of itself,

28   this shows that specific pleadings are *not* required as to the *other* defenses listed.  Were a level of

specificity required as to *all* statutory defenses, there would be no reason to require specifics as to *some*. "*See Bonneville Power Admin. v. FERC*, 422 F.3d 908, 916 (9th Cir. 2005) (discussing 'basic principle of statutory construction . . . that the specific prevails over the general')." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 779 (9th Cir. 2006). Specificity is simply not required as to these defenses. The statute's specificity requirement as to some, but not all, must be presumed deliberate. Thus, Swanson' Affirmative Defenses have been adequately pled.[1]

### D.   "Information and Belief" Allegations Sufficient as Amended.

Swanson may plead any of their claims "on information and belief" if they rely on statements of third parties about what was said by RAM, identify the third parties, state when the conversations occurred, and what those third parties said. Swanson has no other means of knowing what RAM in fact said. Swanson has provided this specific information in the Amended Pleading. *See, In re Secure Computing Corp. Securities Litigation*, 184 F. Supp. 2d 980, 987-88 (N.D. Cal. 2001) ("Plaintiffs are not required to state every fact that they possess that is in any way related to allegations that are plead on information and belief. Rather, a 'plaintiff must provide, in great detail, all the relevant facts forming the basis of [its] belief.' . . . For example, if Plaintiffs make an allegation that is based on a statement from a witness, they must reveal the facts about that witness that were material to the formation of their belief that the witness' statement is accurate. The precise amount of detail that they must reveal depends on the circumstances.") (citation omitted). Also, Swanson is permitted to draw reasonable inferences from the facts known to make allegations on information and belief, under the general rules of construction of pleadings stated earlier. *See Sebastian* and *Meridian*.

RAM concedes Swanson may, on information and belief, allege that RAM did not perform adequate inspection prior to suit, which is peculiarly within RAM's knowledge. There is

---

[1]  If there are any contrary holdings by District Courts, *arguendo*, the Court obviously must defer to Ninth Circuit level authority. This is merely a question of construction of an unambiguous statute. *Cf. also* this Court's decision in *Competitive Technologies v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1161 (N.D. Cal. 2003) (Spero, M.J.), *appeal dism'd*, 374 F.3d 1098; 71 U.S.P.Q.2d (BNA) 1359 (Fed. Cir. 2004) ("to the extent that Fujitsu seeks a declaration of unenforceability as to UI's claims against Fujitsu in this action based on patent misuse, Fujitsu's Fifth Counterclaim ... survives UI's motion to dismiss"). Also, see new Affirmative Defense ¶¶3 and 4.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1   no reason to believe RAM did so in a competent or authorized fashion, in light of the totally

2   invalid comparison of the products of RAM and Swanson in the Complaint.

3        **E.**     **Rule 9(b) Complaints Satisfied in Amended Pleading.**

4        Even if Rule 9(b) is applicable rather than Rule 8, *arguendo*, the Amended Pleading

5   satisfies both.  *See In re Secure Computing Corp. Securities Litigation*, *supra*.

6        **F.**     **"Bad Faith" Adequately Pled.**

7        RAM at 5-6 argues Swanson has not pled "bad faith."  However, this flies in the face of

8   the *Sebastian* and *Meridian* standard of construing allegations in favor of the nonmovant.  By

9   arguing that Swanson has not pled "bad faith," RAM is merely asking for "magic words."  *See*

10  *Cabrera v. Martin*, 973 F.2d 735, 745 (9th Cir. 1992) (§ 1983 claim pled even without "magic

11  words" of "under color of state law").  Counterclaim ¶ 1 (Amended Pleading at 5:7-9) says

12  RAM's patent claims "are in bad faith, are a sham, are frivolous, and are an obvious attempt to

13  drive legitimate competition from the marketplace by improper assertion of the '996 Patent."

14  Then facts supporting those allegations are given.  *See also id*. ¶ 28 (at 9:19-20) ("filed this sham,

15  frivolous lawsuit, in bad faith, without probable cause and for the purpose of harassment,

16  knowing its patent infringement allegations were baseless, simply a ruse to 'crush' Swanson").

17       In *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367; 70

18  U.S.P.Q.2d (BNA) 1161 (Fed. Cir. 2004) (on appeal from Judge Fogel), the Court noted that the

19  sham litigation exception to patent preemption rested on a showing that the patent infringement

20  litigation was "objectively baseless" and in "subjective bad faith."  362 F.3d at 1374-77.  "A

21  cover for achieving anti-competitive effects" meets the "subjective bad faith component.

22  Pleading "knowing its allegations were baseless," "any reasonable litigant could not reasonably

23  believe that it could succeed on the merits of RAM's claims," and "frivolous," construed in favor

24  of Swanson, meets the "objectively baseless" test.  Therefore, Swanson did adequately plead "bad

25  faith" under *Globetrotter* to escape patent preemption under the "sham" doctrine.

26       *See also Meridian*, 404 F. Supp. 2d at 1220-21 ("CMIC's allegations appear to satisfy

27  both Rule 9(b) and the *Noerr-Pennington* heightened pleading requirement because they provide

28  specific detail regarding the alleged misconduct:  Meridian asserting a claim it knew was

1   objectively baseless . . . 'for the purpose of interfering with CMIC's business rather than the

2   purpose of obtaining the relief requested.'").  In any event, the Amended Pleading now has the

3   "magic words" of "bad faith." *Id.*, ¶¶ 1, 28, 28.d & 52.

4       RAM suggests Swanson cannot raise claims against RAM predicated on RAM's filing a

5   baseless patent infringement claim, relying on 35 U.S.C. § 271.  However, the plain language of

6   that provision totally belies that assertion.  It gives the privilege *if* the "patent owner [is]

7   *otherwise entitled to relief for infringement* ..." (emphasis added).  Obviously, Swanson is

8   claiming RAM is not "otherwise entitled to relief for infringement."  Therefore, § 271 is

9   irrelevant at the pleading stage.

10      **G.       RAM Has Violated § 43(a) of the Lanham Act.**

11      The Amended Pleading alleges RAM, in the course of advertising and promoting its test

12  head manipulator to a joint client of RAM and Swanson, TI, in interstate commerce, told TI, on

13  information and belief, as elucidated in the Facts Common to Remaining Counterclaims,

14  Amended Pleading at pages 6-12, that Swanson had "stolen" RAM's design and infringed RAM's

15  patent.  Swanson pleads this was false and misleading, misrepresenting the nature, characteristics,

16  and qualities of Swanson's product, and that Swanson reasonably believes it is likely to be

17  damaged by such acts.  Amended Pleading at ¶¶ 36 - 48.  Therefore, Swanson has adequately

18  stated a claim for violation of § 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), with relief

19  therefor provided under 15 U.S.C. § 1117, not subject to Rule 12(b) dismissal.  *Ashlar Inc. v.*

20  *Structural Dynamics Research Corp.*, No. C-94-4344 WHO; 36 U.S.P.Q.2d (BNA) 1402, 1408-

21  1409 (N.D. Cal. June 23, 1995) (Orrick, J.), *aff'd per curiam w/o opin.*, 124 F.3d 228 (Fed. Cir.

22  1997), and cases there cited.

23      **H.       Counterclaims Not Preempted.**

24      "Federal statutes do not 'preempt' other federal statutes."  *Baker v. IBP, Inc.*, 357 F.3d

25  685, 688 (7th Cir.), *cert. denied*, 543 U.S. 956 (2004).  "One federal statute does not preempt

26  another."  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (citation omitted).

27  Therefore, regardless whether patent preemption under *Globetrotter* bars any of Swanson's *State*

28  *Law* counterclaims (and it does not), it does not bar Swanson's counterclaim under § 43(a),

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1   *supra*.  In fact, in the *Ashlar* case the defendant raised its product disparagement § 43(a) claim as

2   a counterclaim to a patent infringement suit and Judge Orrick denied the plaintiff's motion to

3   dismiss that counterclaim.  *Ashlar* at 1409.

4           As to the State Law counterclaims, *Globetrotter* states: "State-law claims...survive

5   preemption...to the extent that those claims are based on a showing of 'bad faith' action in

6   asserting infringement."  *Id.*, 362 F.3d at 1374 (citation omitted).  Swanson has alleged

7   infringement is asserted in bad faith.  The specific issue of patent preemption of state law claims

8   not applying in the instance of sham litigation was addressed *contra* to RAM's position herein in

9   *BriteSmile, Inc. v. Discus Dental, Inc.*, No. C 02-03220 JSW; 2005 U.S. Dist. LEXIS 30855

10  (N.D. Cal. Nov. 18, 2005):

11              BriteSmile also moves to dismiss Discus' counterclaims for
12          tortious interference with prospective economic advantage and
            economic business relations, unfair competition under California
13          Business and Professional Code § 17200, common law unfair
            competition, and trade libel.  BriteSmile argues that all of these
14          claims are preempted by federal patent law.  However, both parties
            agree that these state law claims are not preempted if Discus
15          sufficiently alleges bad faith by BriteSmile.  *See Zenith Electronics
            Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) ("to
16          avoid patent law preemption of...state law claims, bad faith must be
            alleged and ultimately proven, even if bad faith is not otherwise an
17          element of the tort claim.").

18              The Federal Circuit explained that while determining
            exactly what constitutes bad faith must be assessed on a case by
19          case basis, "[o]bviously, if the patentee knows that the patent is
            *invalid, unenforceable, or not infringed, yet represents to the*
20          *marketplace that a competitor is infringing the patent, a clear case*
            *of bad faith representations is made out.*"  *Id.* at 1354.  Here,
21          Discus alleges: "BriteSmile has sent letters to at least twelve
            doctors in the Chicago area, threatening a patent infringement
22          lawsuit based on the 914 patent and other patents unless the doctors
            stop using Discus' products and switch to BriteSmile's products. . .
23          . On information and belief, unless enjoined, BriteSmile will
            continue to illegally coerce current customers and prospective
24          purchasers of Discus' light activated and dual-barrel teeth
            whitening system not to purchase and use Discus products under
25          threat of suit for breach of an unenforceable contract and/or
            infringement of knowingly invalid and noninfringed patents." . . .
26          Discus further alleges that "BriteSmile made false and misleading
            threats of patent infringement in it's at least twelve cease and desist
27          letters sent to Discus' customers. . . . BriteSmile threatened Discus'
            customers with patent litigation based on a patent that BriteSmile
28          admitted to this Court had errors in the prosecution had [sic]
            affected the ability to enforce the 914 patent against Discus." . . .

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1
2
3
4

> Thus, Discus alleges that BriteSmile represented to Discus'
> customers that Discus is infringing a patent BriteSmile knows is
> invalid, unenforceable, or not infringed.  Therefore, the Court finds
> Discus sufficiently alleges bad faith conduct by BriteSmile to avoid
> preemption at this procedural stage and denies BriteSmile's motion
> on this ground.

5

*BriteSmile*, 2005 U.S. Dist. LEXIS 30855 at *15-17 (emphasis added here).

6

    *Noerr-Pennington* protection also does not apply to wrongful attempts to disrupt

7

relationships with prospective customers based on out-of-court bad faith communications:

8
9
10
11
12

> Here, CMIC alleges that counterdefendants'
> communications with CMIC's prospective customers were made
> "with the wrongful intent of disrupting CMIC's relationship with
> prospective customers.' ...  Such communications are not "good
> faith acts attendant to effective litigation." ...  Thus, accepting
> CMIC's allegation as true for purposes of this motion,
> counterdefendants' contacts with CMIC's prospective customers
> are not entitled to *Noerr-Pennington* protection.

13

*Meridian*, 404 F. Supp. 2d at 1222-23 (citations omitted).

14
15

    Swanson alleges sham, *BriteSmile*, and malicious bad faith communications outside of court, *Meridian*.  There is no patent preemption of any of Swanson's counterclaims.

16

    **I.**      **Tort Claims Are Adequately Pled in Amended Pleading.**

17
18
19
20
21

    Swanson has adequately pled the elements of its tort claims.  RAM's objection seems pedantic.  RAM does not give sufficient weight to the fact that all the tort claims incorporate the "**FACTS COMMON TO REMAINING COUNTERCLAIMS,**" and also that *all* pleadings are incorporated as to each tort claim.  Nor does RAM consider the liberal pleadings requirements under *Sebastian, Meridian*, and *BriteSmile*.  The Motion is without merit.

22

    **1.**      **Tortious Interference with Prospective Economic Advantage.**

23
24
25
26
27
28

    "[T]he elements of the [tortious interference with prospective economic advantage] tort [are]: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Pacific Gas and Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118,

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1  1126; 791 P.2d 590 n. 2, 270 Cal, Rptr. 1 (1990) ("*PGE*").  *Accord, Sebastian*, 128 F. Supp. 2d at

2  636.  Swanson pleads an ongoing relationship with TI that held a prospective economic

3  advantage, that RAM knew about it, that RAM intentionally attempted to disrupt the relationship,

4  that there was actual disruption, and that economic harm proximately resulted.  This pleading is

5  sufficient under *Sebastian, Meridian*, and *BriteSmile*, *supra*.

6      It is correct that "a plaintiff must plead 'that the defendant's interference was wrongful by

7  some measure beyond the fact of the interference itself,'" *BriteSmile* at *18 (citation omitted);

8  *Sebastian*, 128 F. Supp. 2d at 637, for an economic advantage claim.  However, the "wrongful"

9  act may be anything "proscribed by some [statute or] ...  common law ...  standard." *BriteSmile* at

10  *18-19 (citation omitted).  This requirement can be satisfied by such things as "false and

11  misleading cease and desist letters" to third parties with which the claimant does business, *id.* at

12  *19, "unfair competition and trade libel." *Id.*  Swanson has also alleged the in-commerce product

13  disparagement communications to TI violate Lanham Act § 43(a).  Amended Pleading at pages

14  12 - 13.  Swanson has adequately alleged the elements of those claims, so it has met this *added*

15  requirement for the *economic advantage* claim as well.  *BriteSmile*.  *Accord*, *Sebastian* at 637

16  ("misrepresentation, unfounded litigation, defamation, [and] trade libel"); *Visto Corp. v. Sproqit*

17  *Technologies, Inc.*, 360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005) (Chin, J.) ("unfounded

18  litigation, defamation, trade libel").[2]

19          **2.     Slander Per Se.**

20          *Section 46*, *Civil Code* defines slander as "a false and unprivileged
          publication, orally uttered . . . which 1.  Charges any person with
21          crime. . . .  3.  Tends directly to injure him with respect to his . . .
          profession, trade or business that has a natural tendency to lessen its
22          profits.

23  *Douglas v. Janis*, 43 Cal. App. 3d 931, 938-39; 118 Cal. Rptr. 280, 285 (1974).  "A slanderous

24  statement which falls within the purview of section 46 constitutes slander per se." *Id.*, n.8

25  (citations omitted).  "'This being a case of slander *per se* (charging the crime of theft), general

26

27  [2]  Discus premises its counterclaim for tortious interference with prospective economic advantage
and economic business relations on BriteSmile's alleged false and misleading cease and desist
28  letters . . .." *BriteSmile* at *19.  Allegations of "sham" were a sufficient predicate.  *Id.*

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1    damages are presumed as a matter of law."  *Id.*, 43 Cal. App. 3d at 940; 118 Cal. Rptr. at 286

2    (citation omitted).  *See also Cunningham v. Simpson*, 1 Cal. 3d 301; 461 P.2d 39; 81 Cal. Rptr.

3    855 (1969).  On founded information and belief, RAM made statements tending to directly injure

4    Swanson with respect to its profession, trade, or business (accusing Swanson of patent

5    infringement and theft).  These statements on their face had a natural tendency to lessen its

6    profits; in particular, by forestalling a lucrative business deal between Swanson and TI (with the

7    intention of RAM's obtaining the deal instead).  This pleading of slander is clearly sufficient.[3]

8        To clarify, Swanson is claiming *it* was slandered as a separate legal entity, not Todd

9    Swanson individually.  "In California, a corporation's right and redress against defamation is well

10   established. ...  [I]n this case governed by California substantive law, there is no distinction

11   between the protectible interest in reputation of corporations and individuals and the former as

12   much as the latter may recover special, general and punitive damages.'"  *Vegod Corp. v.*

13   *American Broadcasting Cos., Inc.*, 25 Cal. 3d 763, 770; 603 P.2d 14, 18; 160 Cal. Rptr. 97, 101-

14   102 (1979) (citations omitted), *cert. denied*, 449 U.S. 886 (1980).

### 3.    Trade Libel or Business Disparagement.

16       "To plead a claim for trade libel, a plaintiff must allege 'that the defendant: (1) made a

17   statement that disparages the quality of the plaintiff's product; (2) that the offending statement

18   was couched as fact, not opinion; (3) that the statement was false; (4) that the statement was made

19   with malice; and (5) that the statement resulted in monetary loss."  *BriteSmile* at *21 (citations

20   omitted).

21       First, patent infringement claims disparage a product's quality, affecting its *salability*:

22           Continental's complaint alleges that Lamb contacted
             Continental's customers and falsely accused Continental of
23           violating Lamb's patent.  Such a claim amounted to a denigration of
             Continental's products no less than if Lamb had claimed they were
24           defectively designed or manufactured.  Lamb clearly stated that
             Continental's products were burdened with a legal infirmity that
25           would place a Continental customer in legal jeopardy if it

26   _____

[3]  *Cf. Douglas*, 43 Cal. App. 3d at 940; 118 Cal. Rptr. at 286 ("'To say that one has "taken"
27   money belonging to another and not accounted for it is to say that he has *stolen* that money.'")
     (emphasis added; citation omitted).  Thus, the precise language of the conversation is not
28   dispositive if the import of the language is *clear* that the speaker intended a slander.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1   purchased and used or resold the product.

2   *Atlantic Mutual Insurance Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1037; 123 Cal. Rptr. 2d

3   256, 271 (2002). [4] *Cf. Ashlar, supra*, 36 U.S.P.Q.2d (BNA) at 1408-1409 (false allegation of

4   patent infringement stated claim of product disparagement under Lanham Act § 43(a)).[5] Second,

5   RAM obviously meant its patent infringement statements *were a fact*; otherwise, we would not be

6   here. Third, Swanson pled the statements are false. Fourth, Swanson pled malice. Fifth,

7   Swanson pled the statements resulted in monetary loss. Under *Sebastian, Meridian*, and

8   *BriteSmile, supra*, these allegations are sufficient and cannot be dismissed on a Rule 12(b)(6)

9   motion.

10      **J.      RAM's Out of Court Statements Are Not Protected by the Litigation Privilege
            Because They Were Made with Malice.**

11

12          Whether or not RAM has a defense to any tort claims under an *extraneous* theory--such as

13  the California Litigation Privilege is irrelevant to whether Swanson has common law claims in

14  the first instance. Clearly, it does. Malice is either an element of those claims; or, a bar to any

15  common law privilege defense RAM might assert thereto. For example, if RAM were to plead a

16  privilege for slanderous statements based on the conversation being between "interested parties,"

17  this privilege is defeated if the statement is made with malice. *See Cunningham v. Simpson,

18  supra*, 1 Cal. 3d at 307-308; 461 P.2d at 42; 81 Cal. Rptr. at 858-59, *citing* "section 47,

19  subdivision 3, of the Civil Code." *Id.*[6] This District has likewise so held:

20              Plaintiffs have alleged that the statements were made with malice,
                however, which defeats the conditional privilege for
21              communications between interested persons. . . . [T]he libel claims

22  _____

23  [4] "[I]n interpreting state law ..., federal courts will follow the decision of a state court of appeal
    unless there exists convincing evidence that the State Supreme Court would decide the issue
24  differently." *Babbitt v. Albertson's Inc.*, No. C-92-1883 SBA (PJH); 1993 U.S. Dist. LEXIS
    18801 at *5 (N.D. Cal. Jan. 28, 1993). *Accord, Christian v. Preferred Acc. Ins. Co.*, 89 F. Supp.
    888, 890 (N.D. Cal. 1950).

25  [5] "If the statement was understood in its disparaging sense and if the understanding is a
    reasonable construction of the language used or the acts done by the publisher, it is not material
26  that the publisher did not intend the disparaging statement to be so understood." *Nichols v. Great
    American Insurance Cos.*, 169 Cal. App. 3d 766, 773; 215 Cal. Rptr. 416, 420 (1985) (cite
27  omitted).

28  [6] *See also generally Cunningham*, 1 Cal.3d 301; 461 P.2d 39; 81 Cal. Rptr. 855 (1969).

1    will not be dismissed ....

2    *LeDuc v. Kentucky Central Life Insurance Co.*, 814 F. Supp. 2d 820, 830 (N.D. Cal. 1992).

3         Therefore, malice is clearly relevant to defeat any common law privilege of RAM to

4    Swanson's *tort* claims, particularly Swanson's slander claim.  If the California Litigation

5    Privilege does not cover any of the counterclaims, then (and it does not), malice is relevant, and

6    has been adequately pled.  "Malice, intent, knowledge, and other condition of mind of a person

7    may be averred generally."  Rule 9(b), Federal Rules of Civil Procedure.

8         **K.**    **California Litigation Privilege Does Not Require Dismissal of Counterclaims.**

9         The Litigation Privilege is founded on a statute, Cal. Civ. Code § 47.

10             It is well settled that, in a statutory construction case, analysis must
        begin with the language of the statute itself; when the statute is
11             clear, "judicial inquiry into [its] meaning, in all but the most
        extraordinary circumstance, is finished." ...  Another "fundamental
12             canon of statutory construction is that, unless otherwise defined,
        words will be interpreted as taking their ordinary, contemporary,
13             common meaning."

14   *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005) (aff'g N.D. Cal., Breyer J.) (citations

15   omitted).  The language of the statute is as follows:

16             A privileged publication or broadcast is one made: ...  (b) In any ...
        (2) judicial proceeding [with exceptions not pertinent] ...  (c) In a
17             communication, **without malice**, to a person interested therein,
        (1) by one who is also interested ....

18

19   *Id.*  (emphasis added).

20         Longstanding California case law has virtually foreclosed any other conclusion but that

21   only a malicious prosecution or abuse of process California tort law claim can be predicated on

22   *what is actually said in the pleadings in the courthouse*.  However, this leaves two other issues.

23   *One*, can the California Litigation Privilege based on the statute prevail as against a cause of

24   action founded on a federal statute?  *Two*, does the Privilege reach to RAM's *malicious*

25   communications to TI?

26         Without any doubt, a state law privilege is preempted to the extent that "state law actually

27   conflicts with federal law."  *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1272 (& *id.*

28   at 1273) (10th Cir. 2003).  If the Lanham Act provides for a federal cause of action for product

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1    disparagement in interstate commerce under its § 43(a), 15 U.S.C. § 1125(a) (& § 1117), and it

2    does, then no California Litigation Privilege can preclude Swanson from raising its Lanham Act

3    claim as a counterclaim in a federal court case.

4         In fact, if it *were* possible for a patent owner to use the California Litigation Privilege to

5    defeat a § 43(a) counterclaim, this would result in an unseemly race to the courthouse.  All the

6    party wrongfully claiming infringement would have to do to forestall the § 43(a) claim would be

7    to file the patent infringement claim *immediately*, with no prior notice to the alleged infringer, in

8    a State with such a litigation privilege.  Actually, *this is exactly what RAM has done here*.  Under

9    RAM's scenario, whether a *federal* cause of action could be asserted as a counterclaim in a suit

10   would thus be made to hinge on in which *State's* court the "first-to-file" party elected to sue,

11   which is exactly the type of scenario the preemption rule is intended to forestall.  Therefore, the

12   California Litigation Privilege is preempted in this case, were it to otherwise bar Swanson's

13   assertion of its § 43(a) counterclaim based on the product disparagement by RAM.  *Cf. Ashlar*,

14   *supra* (declining to dismiss § 43(a) counterclaim despite dismissing other claims based on

15   California Litigation Privilege).[7]

16        This leaves then only the question whether any of Swanson's *State* law tort counterclaims

17   are precluded by the California Litigation Privilege.  They are not.  The *PGE* Court only

18   disallowed the "intentional interference with contractual relations or prospective economic

19   advantage" claims *in that case* because "it [was] not alleged that Bear Stearns's conduct has made

20   PG&E's enjoyment of the benefits of its contract more expensive and burdensome, *apart from*

21   *forcing PG&E to defend a costly lawsuit*."  *Id.*, 791 P.2d at 598 (emphasis added).  Swanson is

---

[7]  In any event, as this Court intimated in *Competitive Technologies*, certainly no State law can
prevent the right of an alleged patent infringer to allege "litigation misconduct, which results in
'unclean hands.'"  286 F. Supp. 2d at 1160 (citation omitted).  "The Federal Circuit has held that
a finding of patent misuse–which is a type of unclean hands–'renders the patent unenforceable
until the misuse is purged.' . . . [T]o the extent that Fujitsu seeks a declaration of unenforceability
as to UI's claims against Fujitsu in this action based on patent misuse, Fujitsu's Fifth
Counterclaim . . . survives UI's motion to dismiss."  *Id.* at 1161 (citation and footnote omitted).
Therefore, Swanson cannot be barred from raising any federal claim as either a counterclaim or a
defense in this action based on the California Litigation Privilege, regardless whether that
Privilege applies to any of the *tort* claims which Swanson now alleges in the Amended Pleading
(and it does not).

*OPPOSITION TO MOTION TO STRIKE AFFIRMATIVE*
*DEFENSES, DISMISS COUNTERCLAIMS -*     - 12 -
*Case No. C 06-04693 JCS*

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1  pleading more than that.  Swanson is pleading out of court *communications of theft and the*

2  *intended and actual filing of a sham lawsuit to a third party (TI) to dissuade it from granting a*

3  *manufacturing contract to Swanson*.  This conduct unnecessary to any judicial process is what

4  caused that third party to *discontinue prospective economic relations* with Swanson.  This is far

5  beyond anything *PGE* held was protected from interference liability, which was based simply on

6  having to defend a lawsuit.

7    The § 47 privilege is *explicitly*, *clearly*, and *unambiguously* <u>limited</u> in subsection (c) by

8  saying that any communications to *third parties* must be made "*without malice*."  Cal. Civ. Code

9  § 47(c) (emphasis added).  Thus, the statutory privilege for communications only applies if the

10  communication is made "*without malice*."  Cal. Civ. Code § 47(c).  Since this is unambiguous,

11  "'judicial inquiry into [its] meaning...is finished.'"  *Carter*, 421 F.3d at 911.  Therefore, RAM's

12  contention that it may make *malicious* statements to TI about Swanson based on § 47 is

13  absolutely incorrect.  "While it is true that section 47(3) [now (b)] establishes a qualified privilege

14  for communications between interested parties, this privilege is lost where the statements are

15  made with malice."  *Greenfield v. America West Airlines, Inc.*, No. C 03-05183 MHP; 2004 U.S.

16  Dist. LEXIS 23163 at *16 (N.D. Cal. Nov. 16, 2004) (Patel, J.) (citations omitted).

17    TI is not within the definition of an "interested" party," even if it were, the

18  communications were not privileged.  While some courts appear to take the position that § 47(b)

19  "swallows up" § 47(c) when the subject of the communication to an "interested party" is *about a*

20  *suit* it intends to file or has filed against the defendant.  *See*, *e.g.*, *Sharper Image Corp. v. Target*

21  *Corp.*, 425 F. Supp. 2d 1056, 1077-79 (N.D. Cal. 2006) (Wilken, J.).  However, there is no basis

22  in the language of the statute to support such an "interpretation."  Certainly the statute itself does

23  not carve out of the "interested party" privilege communications to third parties *about a lawsuit*,

24  pending or otherwise.  All subsection *(b)* purports to exempt is a publication "*[i]n*" a "judicial

25  proceeding," not *about* such a proceeding (emphasis added).  There is no basis whatsoever for

26  "extending" communications made *in* a proceeding to communications to third parties *about* such

27  a proceeding.  Instead, the *general* statement about the privilege is *specifically* limited insofar as

28  any communications under the privilege are *made to third parties*.  It is a "basic principle of

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

1    statutory construction . . . that the specific prevails over the general."  *Sacks*, 466 F.3d at 779 (9th

2    Cir. 2006) (citation omitted).

3         Clearly, then, the "without malice" privilege limitation was intended to apply to such

4    latter *suit-related* communications *to third parties.  Cf. Meridian*, 404 F. Supp. 2d at 1223:

5              Here, CMIC alleges that counterdefendants' ...  meeting with
             CMIC's customers was not a good faith effort to forestall litigation,
6              but merely an effort to discourage the customers from purchasing
             CMIC's product.  ...  Such anti-competitive conduct would not be
7              privileged under § 47¶.  Because the court accepts the allegations as
             true for purposes of deciding a motion to dismiss,
8              counterdefendants' motion to dismiss the Third and Fourth
             Counterclaims on the basis of § 47**(b)** is DENIED.  [Emphasis
9              added.]

10        Thus, malicious statements to third parties *about* litigation is *not* a § 47**(b)** communication

11   but rather a § 47**(c)** communication subject to the "without malice" privilege limitation.

12   Otherwise, a communication which would obviously otherwise not be protected can be

13   immunized by the simple expedient of filing a lawsuit.[8]  To the extent there could *arguendo* be

14   any ambiguity whether statements to third parties have an "if it relates to a lawsuit" exception,

15   reading it that way would create this anomalous consequence, which courts are to avoid in any

16   statutory construction context.

17        To whatever extent a statute *is* ambiguous, *see* the following:

18             We begin by examining the statutory language, giving the words
             their usual and ordinary meaning.  ...  If there is no ambiguity, then
19             we presume the lawmakers meant what they said, and the plain
             meaning of the language governs.  ...  If, however, the statutory
20             terms are ambiguous, ...  we ...  *avoid an interpretation that would
             lead to absurd consequences*."

21

22   *Day v. City of Fontana*, 25 Cal. 4th 268, 272; 19 P.3d 1196, 1198-99; 105 Cal. Rptr. 2d 457, 459-

23   60 (2001) (emphasis added; citations omitted).

24             [W]e begin by examining the language of the statute.  ...  But '[i]t is
             a settled principle of statutory interpretation that language of a
25             statute should not be given a literal meaning if doing so would

26   _____
[8]  "[S]imilarity, or even identity, of subject matter is not a 'connection or logical relation'
27   between litigation and a communication which is alone sufficient to trigger the litigation
     privilege."  *Rothman v. [Michael] Jackson*, 49 Cal. App. 4th 1134, 1146; 57 Cal. Rptr. 2d 284,
28   292 (1996).

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

1
2
3
4

> *result in absurd consequences* which the Legislature did not intend.' ... Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'"

5
6

*Horwich v. Superior Court of Los Angeles County*, 21 Cal. 4th 272, 276; 980 P.2d 927, 930; 87 Cal. Rptr. 2d 222, 225 (1999) (emphasis added; citations omitted).

7
8

> Principles of statutory construction also counsel that we should avoid an interpretation that leads to *anomalous or absurd consequences*.

9
10

*Horwich*, 21 Cal. 4th at 280-81; 980 P.2d at 933; 87 Cal. Rptr. 2d at 228-29 (emphasis added; citations omitted).

11
12

[A statute] in derogation of the common law ... must be strictly construed.  *Id.*, 21 Cal. 4th at 287; 980 P.2d at 937; 87 Cal. Rptr. 2d at 233 (citations omitted).

13
14
15
16
17
18
19
20
21
22

Given these rules, Swanson respectfully submits that (a) consideration of the "specific limiting the general" rule shows the statute *un*ambiguously limits the privilege for *all* statements made to third parties to those "without malice" *regardless* the subject of the communication (*e.g.*, about prospective or pending litigation); or (b) to the extent of any facial ambiguity, it would be an anomalous result to say that statements otherwise clearly not privileged (to third parties with malice) could be transformed into privileged statements simply by the expedient of filing a lawsuit making the same statements (including "after the fact" of having already made the slanderous statements to the third parties), so no such "limitation on the limitation" should be "read in."  There is no reason why a party should be without a remedy for false statements made to third parties for malicious reasons merely because a suit is pending (*or might be brought*).

23
24
25

In *Shahvar v. Superior Court of Santa Clara County*, 25 Cal. App. 4th 653, 30 Cal. Rptr. 2d 597 (1994),[9] the court held that whether or not a suit was pending at the time of a communication was made was irrelevant and that the "conduct was not privileged because the

26
27
28

---

[9]  *Abrogated by statute*, *Rothman*, 49 Cal. App. 4th at 1144 n.3; 57 Cal. Rptr. 2d at 291 n.3 (1996) (however, the *Rothman* court notes that the statute does not apply to statements which are not made to a "public journal" and therefore certainly does not apply to the situation in this case).

communication was made to someone unrelated to the litigation." 25 Cal. App. 4th at 656; 30 Cal. Rptr. 2d at 598. "'[R]epublications to nonparticipants in the action are generally not privileged under section 47 (2) [now (b)], and are thus actionable unless privileged on some other basis.'" 25 Cal. App. 4th at 658; 30 Cal. Rptr. 2d at 599 (citation omitted). *Accord*, *Rothman*, 49 Cal. App. 4th at 1147; 57 Cal. Rptr. 2d at 293 (balancing of interests at play "disfavors application of the litigation privilege to spiteful and harmful slurs made *outside of the precincts which the privilege exists to shelter*") (emphasis added). The California Litigation Privilege is a State law, so, to the extent of any conflict, any contrary District level decisions should defer to *Rothman*. *Cf. Babbitt, supra* n.4.

As a result, (a) RAM's *malicious* statements about Swanson (other than *in* the lawsuit) to *anyone* are *not* privileged under either § 47*(b)(2)* or *(c)*, whether or not they are *about* the subject matter of the suit; therefore, *none* of Counterclaimant's California counterclaims may be dismissed under the California Litigation Privilege; and (b) RAM's *malicious* threats to sue TI (on information and belief) which were not made with a "good faith" intention to file any such litigation against TI, based on RAM's claims against Swanson, are actionable and not barred under the Privilege under § 47 as they otherwise come within the scope of the various common-law causes of action treated above.[10]

---

[10] Even cases which hold that pre-suit threats of litigation come within an "absolute" privilege under § 47**(b)**, *Visto, supra*, note that "prelitigation communications are privileged only if made in connection with proposed litigation *contemplated in good faith and under serious consideration*." *Id.,* 360 F. Supp. 2d at 1069 (emphasis added). The Amended Pleading alleges any (on information and belief) "veiled threats to sue" TI were not in good faith. [¶¶ 51 and 52] *Id.* (citations omitted). Therefore, Swanson "has raised enough of a question, at least at the stage of a motion to dismiss under Rule 12(b)(6), to preclude dismissal." *Id.* at 1070. Swanson disagrees with *Visto*, however, as respects *postponing* such a claim until the patent claim has been resolved. *Id.* at 1072-73. Instead, as this Court noted in *Competitive Technologies*, claims such as "abuse of process" are "compulsory counterclaim[s] in the same action in which process is alleged to have been abused" under the "transaction" test which is "'"a word of flexible meaning which may comprehend a series of occurrences if they have logical connection."'" 286 F. Supp. 2d at 1140 (cites omitted). Clearly it is possible to determine if the patent claim or any threatened litigation was "in good faith" or a "sham" *at the same time* as it is determined whether the patent claim is *valid or invalid.* There is no reason for "postponement." In any event, however, at most the counterclaims would be "postponed" as "premature," or dismissed "*without prejudice*" even under *Visto's* rationale, *id.*, *contra* to RAM's motion. Therefore, under no theory can the Amended Pleading be dismissed *with prejudice* as requested by RAM.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

III.    **CONCLUSION & PRAYER FOR RELIEF**

For the reasons stated, the Motion is entirely unfounded; or, in part, *arguendo*.

**WHEREFORE**, Counterclaimant Swanson prays RAM's Motion to Strike and Dismiss be in all things **DENIED**; or, if any grounds are valid *arguendo*, denied in all other respects; and; if granted in any respect, any dismissal *arguendo* should be **WITHOUT PREJUDICE**. Swanson also prays for general relief.

Date: January 26, 2007                          Respectfully submitted,

                                                */s/ Richard L. Schwartz*
                                                Richard L. Schwartz, TX BAR NO. 17869500
                                                WHITAKER CHALK SWINDLE & SAWYER
                                                L.L.P.
                                                rschwartz@whitakerchalk.com
                                                301 Commerce Street, Suite 3500
                                                Fort Worth, TX 76102-4186
                                                (817)878-0500; Fax: (817)878-0501
                                                *Pro Hac Vice* Appearance

                                                and

                                                Daniel Rapaport, CA BAR NO. 67217
                                                WENDEL ROSEN BLACK & DEAN, L.L.P.
                                                drapaport@wendel.com
                                                1111 Broadway, 24th Floor
                                                Oakland, CA 94607-4036
                                                Tel: (510)834-6600
                                                Fax: (510)834-1928
                                                Local Co-Counsel

                                                ATTORNEYS FOR DEFENDANT AND
                                                COUNTER-CLAIMANT
                                                SWANSON SEMICONDUCTOR SERVICE, LLC

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

014539.0001\802415.3

*OPPOSITION TO MOTION TO STRIKE AFFIRMATIVE
DEFENSES, DISMISS COUNTERCLAIMS -
Case No. C 06-04693 JCS*                          - 17 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the U.S. District Court's Electronic Case Filing System, including Dean A. Morehous, (at dam@thelenreid.com) on this 26th day of January, 2007.

*/s/ Richard L. Schwartz*
Richard L. Schwartz

*OPPOSITION TO MOTION TO STRIKE AFFIRMATIVE DEFENSES, DISMISS COUNTERCLAIMS  - Case No. C 06-04693 JCS*

- 18 -