1   DEAN A. MOREHOUS, CA BAR NO. 111841
    dam@thelen.com
2   W. SAMUEL NIECE, CA BAR NO. 148645
    wsniece@thelen.com
3   THELEN REID BROWN RAYSMAN & STEINER LLP
    101 Second Street, Suite 1800
4   San Francisco, CA  94105–3606
    Tel. 415.371.1200
5   Fax 415.371.1211

6   DAVID B. RITCHIE, CA BAR NO. 112018
    dritchie@thelen.com
7   CHRISTOPHER L. OGDEN, CA BAR NO. 235517
    cogden@thelen.com
8   THELEN REID BROWN RAYSMAN & STEINER LLP
    225 West Santa Clara Street, Suite 1200
9   San Jose, CA  95113–1723
    Tel. 408.292.5800
10  Fax 408.287.8040

11  Attorneys for Plaintiff
    REID-ASHMAN MANUFACTURING, INC.

12

13

14              UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16              SAN FRANCISCO DIVISION

17  REID-ASHMAN MANUFACTURING,          CASE NO.:  C 06–04693 JCS
    INC., a California corporation,
18
         Plaintiff,                     NOTICE OF MOTION AND MOTION
19                                       TO STRIKE AFFIRMATIVE DEFENSES
         vs.                             AND TO DISMISS COUNTERCLAIMS
20                                       FROM SWANSON'S "SECOND
    SWANSON SEMICONDUCTOR SERVICE,       AMENDED ANSWER TO COMPLAINT;
21  LLC, a Texas limited liability company,  AFFIRMATIVE DEFENSES;
                                         COUNTERCLAIMS"
22       Defendant.                          [FRCP 12(f) and 12(b)(6))]

23
                                         Date:        April 20, 2007
24                                       Time:        9:30 a.m.
                                         Courtroom:   A, 15th Floor
25

26

27

28

    SV #284794 v4

    Notice of Motion and Motion to Strike Affirmative Defenses and to Dismiss Counterclaims, etc.
    Case No. C 06–04693 JCS

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION AND STATEMENT OF FACTS ...................................................... 2

II.     ARGUMENT ................................................................................................................. 3

    A.      The Legal Standards Governing Motions to Dismiss and Motions to Strike .......... 4

    B.      Swanson's Factual Allegations Are Insufficient to Support Its Affirmative Defenses and Counterclaims ................................................................................... 5

    C.      Swanson's Affirmative Defenses and Counterclaims Fail as Matters of Law and Must Be Stricken or Dismissed ................................................................ 7

        1.      The First Affirmative Defense (Invalidity) (SAC, p.4 ¶1) .......................... 8

        2.      The Third Affirmative Defense (Inequitable Conduct Before the PTO) (SAC, p.4-5 ¶3) ............................................................................... 8

        3.      The Fourth Affirmative Defense (Unclean Hands) (SAC, pp.5 ¶4) .......... 10

            a.      The Fourth Affirmative Defense Sounds in Attempted Monopolization, Not Unclean Hands ............................................ 10

            b.      Even if Construed as Sounding in Patent Misuse the Fourth Affirmative Defense Fails ............................................................. 11

        4.      The Counterclaim for "Declaration of Invalidity, Noninfringement and Unenforceability of the '996 Patent and Patent Misuse" (SAC, pp. 5-7 ¶¶1-6) .................................................................................. 11

        5.      The Counterclaim for "Product Disparagement, False Advertising and Unfair Competition in Violation of ¶43(a) of the Lanham Act" (SAC, pp.13-14 ¶¶36-48) ...................................................................... 12

        6.      The State-Law Business Tort Counterclaims (SAC, pp. 14-17 ¶¶49-68) ................................................................................................ 13

            a.      All of the  State-Law Counterclaims Are Preempted by Federal Patent Law ................................................................................... 13

            b.      The Statements Attributed to Reid-Ashman Are Absolutely Privileged Under the California Litigation Privilege ................... 14

            c.      Swanson's Counterclaim for "Tortious Interference with Ongoing Business Relations and Prospective Economic Advantage" is Preempted by Federal Patent Law, Barred by the California Litigation Privilege and Fails as a Matter of State Law ................................................................................... 14

            d.      Swanson's Counterclaims for "Slander" and "Trade Libel or Business Disparagement" Are Preempted by Federal Patent Law and  Barred by the California Litigation Privilege ....................................................................................... 16

III.    CONCLUSION ........................................................................................................... 16

Notice of Motion and Motion to Strike Affirmative Defenses and to Dismiss Counterclaims, etc.
Case No. C 06-04693 JCS

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**                                                                                                    **Page(s)**

3

*Advanced Cardiovascular Systems Inc. v. Medtronic Inc.*,
   41 U.S.P.Q. 2d 1770 (N.D.Cal. 1996)....................................................................... 8, 11

4

*Allen Eng. Corp. v. Bartell Ind., Inc.*,
5
   299 F.3d 1336 (Fed.Cir. 2002) .......................................................................................... 9

6
*Atari Games Corp. v. Nintendo of America, Inc.*,
   897 F.2d 1572 (Fed. Cir. 1990) ...................................................................................... 11

7

*Aulson v. Blanchard*,
8
   83 F.3d 1 (1st Cir. 1996) .................................................................................................... 4

9
*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1990)............................................................................................. 4

10

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
11
   157 F.3d 1340 (Fed.Cir. 1998)....................................................................................... 3, 5

12
*Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.*,
   710 F.2d 1366 (9th Cir. 1983) ........................................................................................ 10

13

*Chiron Corp. v. Abbott Labs*,
14
   156 F.R.D. 219 (N.D.Cal. 1994) .................................................................................. 5, 11

15
*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ............................................................................................... 4

16

*County of Santa Clara v. Astra United States, Inc.*,
17
   428 F. Supp. 2d 1029 (N.D.Cal. 2006) ........................................................................... 12

18
*Elantech Devices Corp. v. Synaptics, Inc.*,
   2006 U.S. Dist. LEXIS 48756 (N.D.Cal. 2006)......................................................... 11, 13

19

*Energy Absorption Systems Inc. v. Roadway Safety Service Inc.*,
20
   28 U.S.P.Q. 2d 1717 (N.D.Ill. 1993)................................................................................. 8

21
*Ferring B.V. v. Barr Labs, Inc.*,
   437 F.3d 1181 (Fed.Cir. 2006, Newman, J., dissenting).................................................... 7

22

*Globetrotter Software, Inc . v. Elan Computer Group, Inc.*,
23
   362 F.3d 1367 (Fed.Cir. 2004) .......................................................................................... 4

24
*Grid Systems, Inc. v. Texas Instruments Inc.*,
   771 F. Supp. 1033 (N.D.Cal. 1991) ................................................................................ 11

25

*Hazeltine Corp. v. Atwater Kent Mfg. Co.*,
26
   34 F.2d 50 (E.D.Pa. 1929)............................................................................................. 4, 7

27
*Holden v. Hagopian*,
   978 F.2d 1115 (9th Cir. 1992)............................................................................................ 4

28

*ISCO Int'l, Inc. v. Conductus, Inc.*,
   279 F. Supp. 2d 489 (D.Del. 2003) ............................................................... 11

*USM Corp. v. SPS Tech., Inc.*, 694 F.2d 505
   (7th Cir. 1982, J. Posner) ............................................................................... 10

*Molins PLC v. Textron, Inc.*,
   48 F.3d 1172 (Fed.Cir. 1995) ......................................................................... 9

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ......................................................................... 12

*Noble Fiber Technologies, LLC v. Argentum Medical, LLC*,
   2006 U.S. Dist. LEXIS 43357 (M.D.Pa. 2006) ............................................. 11

*In re Papst Licensing, GmbH Patent Litigation*,
   174 F. Supp. 2d 446 (E.D.La. 2001) ............................................................. 10

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F. Supp. 2d 1048 (N.D.Cal. 2004) ........................................................... 4

*Prof'l Real Estate Investors v. Columbia Pictures Indus, Inc.*,
   508 U.S. 49, 113 S.Ct. 1920 (1993) ............................................................... 4

*Sebastiani Int'l, Inc. v. Russolillo*,
   128 F. Supp. 2d 630 (C.D.Cal. 2001) ........................................................... 15

*Securities Investor Protection Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) ......................................................................... 5

*Shaper Image Corporation v. Target Corporation*,
   425 F. Supp. 2d 1056 (N.D. Cal. 2006) ................................................... 13, 15

*Sun Microsystems v. Dataram Corp.*,
   1997 U.S. Dist. LEXIS 4557 ........................................................................... 8

*Visto Corp. v. Sproqit Tech.*,
   360 F. Supp. 2d 1064 (N.D.Cal. 2005) ..................................... 11, 13, 14, 15

*Xilinx Inc. v. Altera Corp.*,
   33 U.S.P.Q. 2d 1149 (N.D.Cal. 1994) ........................................................ 7, 8

*Zenith Elects. Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed.Cir. 1999) ............................................................ 5, 11, 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ..................................................................................... 10

**STATE CASES**                                                                                          **Page(s)**

*Arabian Shield Dev. Co. v. Hunt*,
    808 S.W.2d 577 (Tex.App. 1991) ................................................................................ 6

*Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co.*,
    47 Cal. App. 4th 464 (Cal.App. 1996) ..................................................................... 15

*Augusta v. United Services Automobile Assn.*,
    13 Cal. App. 4th 4 (1993)........................................................................................... 7

*Della Penna v. Toyota Motor Sales, USA, Inc.*,
    11 Cal. 4th 376 (1995)............................................................................................. 14

*Dwyer v. Sabine Mining Co.*,
    890 S.W.2d 140 (Tex.App. 1994) ............................................................................ 7

*Guess, Inc. v. Superior Court*,
    176 Cal. App. 3d 473 (1986).................................................................................. 6, 7

*Hill v. Heritage Resources*,
    964 S.W.2d 89 (Tex.App. 1997) .............................................................................. 6

*Litton Systems, Inc. v. Honeywell Inc.*,
    1995 WL. 366468 (C.D.Cal. 1995),
    *aff'd in part, rev'd in part*, 87 F.3d 1559 (Fed.Cir. 1996) .............................. 8, 9

*McFaddin v. H. S. Crocker Co.*,
    219 Cal. App. 2d 585 (1963) .................................................................................... 7

*Newsom v. Brod*,
    89 S.W.3d 732 (Tex.App. 2002) .............................................................................. 7

*Prudential Insurance Co. of America v. Financial Review Services*,
    29 S.W.3d 74 (2000) ............................................................................................... 14

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) .......................................................................................... 14

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990)....................................................................................... 13, 15

*Texas Disposal System Landfill v. Waste Management Holdings*,
    2005 Tex. App. LEXIS 4898 (2005) ...................................................................... 14

**FEDERAL STATUTES**

35 U.S.C.
    § 271 ......................................................................................................................... 6
    § 271(d)(3)........................................................................................ 4, 5, 7, 10, 12
    § 283 ......................................................................................................................... 7

Notice of Motion and Motion to Strike Affirmative Defenses and to Dismiss Counterclaims, etc.
Case No. C 06–04693 JCS

37 C.F.R.
§ 1.98(a)(3) .................................................................................................. 9

FRCP
8 .................................................................................................... 1, 7, 14
9(b) ................................................................................................. *passim*
12(b)(6) ............................................................................................... 1, 4
12(f) ................................................................................................ 1, 2, 4

15 U.S.C.
§ 2 .................................................................................................... 10


**STATE STATUTES**

California Civil Code
§ 47(b) .......................................................................................... 13, 14, 15

California Code of Civil Procedure
§ 340(c) ................................................................................................... 6
§ 339(1) ................................................................................................... 6

-v-

TO:  SWANSON SEMICONDUCTOR SERVICE LLC AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 20, 2007, at 9:30 a.m., in Courtroom A, or as soon thereafter as counsel can be heard, plaintiff and counterclaim defendant Reid-Ashman Manufacturing, Inc. ("Reid-Ashman") will move the Court before the Honorable Joseph C. Spero, United States Magistrate Judge, for an order striking the first affirmative defense (invalidity), the third affirmative defense (inequitable conduct before the United States Patent and Trademark Office ("PTO")) and the fourth affirmative defense (unclean hands/patent misuse) from the "Second Amended Answer to Complaint; Affirmative Defenses; Counterclaims" (Docket #61, hereinafter "SAC") filed by defendant and counterclaim plaintiff Swanson Semiconductor Service, LLC ("Swanson") on January 26, 2007.

Reid-Ashman will also move the Court for an order dismissing with prejudice the following Swanson counterclaims contained in the SAC:

- Declaration of Invalidity, Noninfringement and Unenforceability of the '996 Patent and Patent Misuse;
- Product Disparagement, False Advertising, and Unfair Competition in Violation of § 43(a) of the Lanham Act;
- Tortious Interference with Ongoing Business Relations and Prospective Economic Advantage;
- Slander; and
- Trade Libel or Business Disparagement.

Reid-Ashman brings this motion to strike and motion to dismiss pursuant to FRCP 12(f) and 12(b)(6).

The grounds for the motion to strike the affirmative defenses of invalidity, inequitable conduct before the PTO and unclean hands/patent misuse are that under FRCP 8 and 9(b) the defenses are not pleaded sufficiently to give fair notice to Reid-Ashman and are not pleaded with the particularity required by FRCP 9(b).  The grounds for the motion to dismiss the counterclaims are that under  FRCP 12(b)(6), 8 and 9(b):  (1) the counterclaims, and each of them, fail to state a claim upon which relief may be granted, (2) the counterclaims do not give fair notice to Reid-Ashman, (3) the counterclaims, and each of them are not plead with the particularity required by

1  FRCP 9(b), (4) the actions attributed to Reid-Ashman in the counterclaims, and each of them, are

2  preempted or barred by federal patent law and absolutely privileged under the California

3  Litigation Privilege, and (5) the counterclaims are barred by applicable statutes of limitation.

4          These motions are based upon this Notice of Motion and Motion, the following

5  Memorandum of Points and Authorities, the files and records of this action, any Reply

6  memorandum, and such additional evidence and argument as may be presented at the hearing on

7  this motion.

8                    **MEMORANDUM OF POINTS AND AUTHORITIES**
                **IN SUPPORT OF MOTION TO STRIKE AFFIRMATIVE DEFENSES**
9              **AND TO DISMISS COUNTERCLAIMS FROM SWANSON'S**
                    **"SECOND AMENDED ANSWER TO COMPLAINT;**
10                 **AFFIRMATIVE DEFENSES; COUNTERCLAIMS"**

11 **I.      INTRODUCTION AND STATEMENT OF FACTS**

12         As affirmative defenses and counterclaims, infringer Swanson alleges: (1) the invalidity of

13 United States Patent No. 6,766,996 (the "'996 Patent"); (2) that Reid-Ashman has engaged in

14 inequitable conduct before the PTO; (3) that Reid-Asman is guilty of unclean hands in seeking to

15 enforce the '996 Patent beyond its scope, amounting to unclean hands; (4) that Reid-Ashman has

16 engaged in product disparagement, false advertising and unfair competition in violation of the

17 Lanham Act; and (5) that Reid-Ashman has engage in various state law business torts through its

18 assertion of its patent infringement claim against Swanson.

19         In an attempt to support of its affirmative defenses and counterclaims Swanson makes the

20 following factual allegations:

21           • That Reid-Ashman made "veiled threats" to sue
               Texas Instruments (SAC at p.10 ¶27 and p.15 ¶¶ 51, 52);
22

23           • That Reid-Ashman did not contact Swanson about this litigation
               prior to serving copy of the Complaint on Swanson (SAC at p.5 ¶4,  p.5-6 ¶1,
               p.7 ¶6 and p.11 ¶29);
24

25           • That Reid-Ashman informed Texas Instruments that Reid-Ashman
               was pursuing legal action against Swanson for patent infringement (SAC at
               p.10 ¶26 and p.12 ¶32 and p.12 ¶35);
26

27           • That Swanson "stole" Reid-Ashman's design (SAC at p.10 ¶26, p.12 ¶32, p.12-
               13 ¶35, p.13 ¶39, p.14 ¶45, p.16 ¶57, p.16-17 ¶62);

28

SV #284794 v4

-2-

Notice of Motion and Motion to Strike Affirmative Defenses and to Dismiss Counterclaims, etc.
Case No. C 06–04693 JCS

- That at the July 2003 Semicon Trade Show in San Jose, California Reid-Ashman stated that it would "crush" Swanson (SAC at p.8 ¶14, p.12 ¶33); and

- That in a September 2006 telephone conversation Reid-Ashman remarked that it did not need another competitor (SAC at p.10 ¶26).

These factual allegations fail to support Swanson's right to relief under any of the legal theories espoused by Swanson because, *inter alia*, they are invariably grounded on Reid-Ashman's exercise of its statutory right to enforce its presumptively-valid patent.

Procedurally, Swanson's invalidity affirmative defense is defective because it fails to give Reid-Ashman notice; Swanson's inequitable conduct before the PTO affirmative defense is defective because it fails to impart notice to Reid-Ashman and is not pleaded with the specificity required under FRCP 9(b); Swanson's unclean hands/patent misuse affirmative defense is defective because it fails to impart notice to Reid-Ashman and is not pleaded with the specificity required under FRCP 9(b), and sounds in attempt to monopolize but does not plead the elements of attempted monopolization.  Swanson's declaratory relief counterclaim is based on its invalidity, inequitable conduct before the PTO and unclean hands/patent misuse affirmative defenses and fails with them.

Swanson's Lanham Act § 43(a) counterclaim fails because it is barred by federal patent law and is not pleaded so as to give adequate notice to Reid-Ashman.

Swanson's state-law business tort counterclaims fail because they are preempted by federal patent law, are subject to California's litigation privilege, are not pleaded so as to give adequate notice to Reid-Ashman, and/or are barred by applicable statutes of limitation.

The SAC is Swanson's third attempt to plead its affirmative defenses and counterclaims.  It is now time to strike the affirmative defenses and dismiss the counterclaims without leave to amend.

## II.   ARGUMENT

Reid-Ashman's duly issued '996 Patent is presumptively valid, as are Reid-Ashman's efforts to enforce its rights.  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed.Cir. 1998) ("The law recognizes a presumption that the assertion of a duly granted patent is made in good faith . . . [and] this presumption is overcome only by affirmative evidence of bad faith.")   Thus, to

sustain its affirmative defenses and counterclaims Swanson must plead and eventually prove that Reid-Ashman acted in bad faith in enforcing the '996 Patent.  *Globetrotter Software, Inc . v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed.Cir. 2004) (affirming Judge Fogel).  It is apparent that Swanson has no facts supporting any bad faith conduct by Reid-Ashman which it can plead in this case, let alone prove at trial.

Swanson's repeated incantation of the phrase "bad faith" is nonsensical in that it reflects an assumption by Swanson that Reid-Ashman has knowledge of alleged invalidity of the '996 Patent. That is not enough to plead bad faith under the applicable standard – FRCP 9(b).  A plaintiff claiming that a patent holder has engaged in wrongful conduct in asserting claims of patent infringement must establish that the claims of infringement are objectively baseless.  *Globetrotter Software*, 362 F.3d at 1377.  To be objectively baseless, an action must be such that no reasonable litigant could realistically expect success on the merits.  *Prof'l Real Estate Investors v. Columbia Pictures Indus, Inc.* 508 U.S. 49, 57, 113 S.Ct. 1920 (1993).  But this action is based on a presumptively-valid patent.  Accordingly, Reid-Ashman can realistically expect to succeed, and the action is not objectively baseless.  Swanson's conclusory allegations make a mockery of the standard that an issued patent is presumed valid and enforceable.

### A.      The Legal Standards Governing Motions to Dismiss and Motions to Strike

Dismissal under FRCP 12(b)(6) can be based on a lack of a cognizable legal theory or the absence of sufficiently pleaded facts to support a cognizable theory.  *See Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on a motion to dismiss, a court must construe well-pleaded allegations as true, and draw all reasonable inferences therefrom.  *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).   The court is not required, however, to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  *See also Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).  The standard for a motion to strike under FRCP 12(f) is similar.  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D.Cal. 2004).

**B.** **Swanson's Factual Allegations Are Insufficient to Support Its Affirmative Defenses and Counterclaims**

Putting aside the invective, Swanson's affirmative defenses and counterclaims are little more than unsupportable conclusions and bald assertions.

Swanson alleges that Reid-Ashman made "veiled threats" to sue Texas Instruments. SAC p.10 ¶27, p.15 ¶¶51, 52. Even if this were true, it would provide no support for any of Swanson's affirmative defenses or counterclaims. Texas Instruments used the accused device. SAC p.9 ¶22. Thus, Reid-Ashman would have been well within its rights to sue Texas Instruments. A patent owner may not be denied relief or subjected to liability for seeking to enforce its patent rights against infringement. 35 U.S.C. § 271(d)(3).

> There are few rights which are so far absolute as that they can be enforced to the limit without running into a wrong to some one else. This is the infringement of a patent suit. A patentee has the undoubted right granted by law to ask for an injunction and for damages against every maker, *user*, or seller of what has been patented.

*Hazeltine Corp. v. Atwater Kent Mfg. Co.*, 34 F.2d 50 (E.D.Pa. 1929) (emphasis added).

Swanson also complains that Reid-Ashman informed Texas Instruments that Reid-Ashman was pursuing legal action against Swanson for patent infringement. SAC at p.10 ¶26 and p.12 ¶32 and p.12 ¶35. This is also non-actionable under 35 U.S.C. § 271(d)(3). Federal patent law preempts state-law tort liability for a patent owner's good-faith assertion of its patent and warning about litigation. *Zenith Elects. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed.Cir. 1999). In addition, federal patent law bars liability under § 43(a) of the Lanham Act for marketplace activity in support of a patent unless the accused infringer can establish bad faith on the part of the patent owner. *Id.* at 1352-53. *See also C.R. Bard*, 157 F.3d at 1369 ("The law recognizes a presumption that the assertion of a duly granted patent is made in good faith . . . [and] this presumption is overcome only by affirmative evidence of bad faith.") Finally, bad faith must be pleaded with particularity in accordance with FRCP 9(b). *Chiron Corp. v. Abbott Labs*, 156 F.R.D. 219, 220 (N.D.Cal. 1994). Swanson's bald assertions and unsupported legal conclusions are not sufficient to plead that informing Texas Instruments of this action was in bad faith, because all that Swanson

SV #284794 v4

-5-

Notice of Motion and Motion to Strike Affirmative Defenses and to Dismiss Counterclaims, etc.
Case No. C 06–04693 JCS

1  has alleged is that Reid-Ashman took steps to enforce its presumptively valid patent.

2  Accordingly, the Court should not credit these allegations.

3      Next, Swanson alleges that Reid-Ashman did not contract Swanson about this litigation

4  prior to serving a copy of the Complaint on Swanson. SAC p.5 ¶4, p.5-6 ¶1, p.7 ¶6 and p.11 ¶29.

5  There is no requirement for pre-filing meet and confer. Contacting Swanson before filing a

6  Complaint in this District would have resulted in Reid-Ashman facing a declaratory relief action

7  in Texas. Reid-Ashman prefers to litigate in this District, and as the plaintiff is entitled to its

8  choice of forum. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir.

9  1985). That choice has a already been vindicated by this Court in denying Swanson's motion to

10  change venue. Order (Docket #31).

11      Swanson also alleges that Reid-Ashman told Texas Instruments that Swanson "stole" Reid-

12  Ashman's manipulator design. SAC p.10 ¶26, p.12 ¶32, p.12-13 ¶35, p.13 ¶39, p.14 ¶45, p.16

13  ¶57, p.16-17 ¶62. Such a statement is part-and-parcel of the allegation that Swanson infringed

14  Reid-Ashman's '996 Patent. *See, e.g.*, SAC at p.10 ¶26: "TI had told Swanson that TI had been

15  informed in person by multiple representatives of RAM that Swanson had 'stolen the design of

16  RAM's manipulator' and that RAM was in the process of pursuing legal action against Swanson."

17  Accordingly, it is included within the sweep of 35 U.S.C. § 271 and the cases cited above.

18      Swanson alleges that at the *July 2003* Semicon trade show in San Jose, California, Reid-

19  Ashman stated that it would "crush" Swanson. SAC at p.8 ¶14, p.12 ¶33 (emphasis added). As to

20  this statement the statutes of limitation have long since run on all of Swanson's state law business

21  tort counterclaims, *i.e.*: "Tortious Interference with Ongoing Business Relations and Prospective

22  Economic Advantage" (SAC, pp.14-15 ¶¶49-55); "Slander" (SAC, p.16 ¶¶56-60); and "Trade

23  Libel or Business Disparagement" (SAC, pp.16-17 ¶¶61-68). To the extent that these causes of

24  action are based on the statement allegedly made at the July 2003 Semicon they are barred by the

25  applicable California statutes of limitation -- as indicated on the face of Swanson's SAC. The

26  statute of limitations for slander is one year. California Code of Civil Procedure § 340(c); *Guess,*

27  *Inc. v. Superior Court*, 176 Cal.App.3d 473, 476 (1986). The statute of limitation for trade libel is

28  two years. California Code of Civil Procedure § 339(1); *Guess*, 176 Cal.App.3d at 479. The

statute of limitations for tortuous interference with business and contractual relations is two years. California Code of Civil Procedure § 339(1); *Guess*, 176 Cal.App.3d at 478; *McFaddin v. H. S. Crocker Co.*, 219 Cal.App.2d 585, 592-93 (1963); *Augusta v. United Services Automobile Assn.*, 13 Cal.App.4th 4, 10 (1993). The same result would obtain under Texas law. *Newsom v. Brod*, 89 S.W.3d 732, 735-36 (Tex.App. 2002) (slander, one year); *Dwyer v. Sabine Mining Co.*, 890 S.W.2d 140, 142 (Tex.App. 1994) (business disparagement, two years); *Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 584 (Tex.App. 1991) (tortuous interference with existing contract, two years); *Hill v. Heritage Resources*, 964 S.W.2d 89, 116 (Tex.App. 1997) (tortuous interference with business relations, two years).  Accordingly, any action based upon the alleged "crush" statement became time-barred in July 2005 – a year and a half before Swanson first filed its state law business tort counterclaims.

Finally, Swanson alleges that in a September 2006[1] telephone conversation, in answer to a statement "I understand you are suing Swanson," Reid-Ashman remarked that it did not need another competitor.  SAC p.10 ¶26.  Such a statement falls within the scope of 35 U.S.C. § 271(d)(3) -- that a patent owner may not be denied relief or subjected to liability for seeking to enforce its patent rights against infringement.  Limiting competition from others' commercial embodiments of the patented technology is the essence of the patent right.  Thus, a patent owner may seek an injunction to prevent an infringer from selling an infringing product in competition with the patent owner's commercial embodiments of the patent.  35 U.S.C. § 283; *Hazeltine*, 34 F.2d at 50.

**C.**     <u>**Swanson's Affirmative Defenses and Counterclaims Fail as Matters of Law and Must Be Stricken or Dismissed**</u>

Even if the Court were to accept the factual allegations of Swansons's affirmative defenses and counterclaims, the affirmative defenses and counterclaims fail substantively because they are preempted or barred by federal patent law or subject to the California litigation privilege, and/or procedurally because they are not pleaded with the specificity required by FRCP 8 or 9(b).

---

[1]    *I.e.*, a month after commencing this action.

1. **The First Affirmative Defense (Invalidity) (SAC, p.4 ¶1)**

Swanson's invalidity affirmative defense must be stricken for failure to provide fair notice to Reid-Ashman. It merely alleges that the claims of the '996 Patent fail to meet "one or more of the conditions for patentability" specified in §§ 102, 103, 112 and 132. As this court pointed out in *Advanced Cardiovascular Systems Inc. v. Medtronic Inc.*, 41 U.S.P.Q.2d 1770, 1773 (N.D.Cal. 1996), there are numerous requirements listed in these sections, and a defendant must provide a more specific statement of the basis for the defense of invalidity in order to give a plaintiff patent owner fair notice of the grounds being asserted. *Id.* Accordingly, in *Advanced Cardiovascular Systems* this Court struck the affirmative defense. *Id.* The Court should do likewise here.

2. **The Third Affirmative Defense (Inequitable Conduct Before the PTO) (SAC, p.4-5 ¶3)**

This Court and the Federal Circuit have repeatedly expressed frustration with the large number of unsupported allegations of inequitable conduct before the PTO. *See*, e.*g.*, *Xilinx Inc. v. Altera Corp.*, 33 U.S.P.Q.2d 1149, 1151 (N.D.Cal. 1994) and more recently *Ferring B.V. v. Barr Labs, Inc.*, 437 F.3d 1181, 1195 (Fed.Cir. 2006, Newman, J., dissenting) (a "scourge" on U.S. patent litigation). Thus, inequitable conduct must be pleaded with particularity in accordance with FRCP 9(b). *Xilinx*, 33 U.S.P.Q. at 1151; *Sun Microsystems, Inc. v. Dataram Corp.*, 1997 U.S.Dist. LEXIS 4557 at *12. Swanson's allegations fail to pass muster.

First, Swanson identifies two documents (a 1985 Reid-Ashman "US 1004 Test Head Manipulator Product Brochure" and a 2000 Reid-Ashman "OH 1510 Product Manual") which Reid-Ashman did not disclose to the PTO. However, in order to satisfy the requirements of FRCP 9(b) a party alleging inequitable conduct must identify the precise content of the alleged fraudulent omissions and indicate why or how the alleged omissions were material. *Energy Absorption Systems Inc. v. Roadway Safety Service Inc.*, 28 U.S.P.Q.2d 1717, 1719 (N.D.Ill. 1993); *Xilinx*, 33 U.S.P.Q.2d at 1153. Swanson utterly fails to identify the precise content of these documents or to indicate why or how that content might have affected the PTO's examination of the application, or as require by FRCP 9(b). Swanson also fails to plead any facts to establish that Reid-Ashman intended to mislead the PTO. That these documents may describe Reid-Ashman's earlier

1   manipulator models is insufficient.  *See, e.g.,  Allen Eng. Corp. v. Bartell Ind., Inc.*, 299 F.3d 1336

2   (Fed.Cir. 2002), wherein the court rejected the accused infringer's argument that the patentee had

3   committed inequitable conduct by not disclosing its earlier model to the PTO during prosecution

4   of a patent based on a subsequent model.  Specifically, the court held that to prevail on the defense

5   of inequitable conduct an accused infringer must establish *both* that the patent applicant withheld

6   material information from the PTO, *and* that the applicant intended to deceive the PTO.  *Id.* at

7   1351.  The court held that even if the earlier model were material, materiality does not presume

8   intent.  *Id.* at 1352.  Here, Swanson has pleaded no facts to establish either the materiality of the

9   US 1004 or the OH 1510 or of Reid-Ashman's intent to deceive the PTO by not disclosing the US

10  1004 or the OH 1510.  Accordingly, the Swanson's defense of inequitable conduct fails.

11      Next, Swanson bizarrely alleges that Reid-Ashman committed inequitable conduct by

12  disclosing *too much* patent prior art, in an attempt to obfuscate what *Swanson* now views (with

13  perfect 20/20 hindsight) as the most relevant references.  This canard has routinely been rejected

14  by the courts.  In prosecution of the '996 Patent, Reid-Ashman identified twenty-eight issued

15  United States patents and two published applications.[2]  In *Litton Systems, Inc. v. Honeywell Inc.*,

16  1995 WL 366468 (C.D.Cal. 1995), *aff'd in part, rev'd in part,* 87 F.3d 1559 (Fed.Cir. 1996), the

17  applicant submitted an undifferentiated list of eighty-two references.  The court nevertheless

18  rejected the accused infringer's allegation of inequitable conduct on the basis of over-inclusion:

19              Although the list of references in the patentability report is long and
              contains some references that are less pertinent than others, the
20              Court cannot say that the submission of the list, in itself, supports a
              finding of inequitable conduct.  [The patent prosecutor's] argument
21              that he did not wish to mislead the examiner by emphasizing some
              references at the expense of others that might be interpreted by the
22              examiner or a Court to be more pertinent is persuasive.  *A patent
              attorney should be encouraged to err on the side of inclusion,*
23              *thereby providing as much prior art with an application as possible.*

24  *Id.* WL 366478 at *37 (emphasis added).  Further, there is no requirement for an applicant to

25  explain the relevance of English language references.  37 C.F.R. § 1.98(a)(3)(i); *Molins PLC v.*

26  _____

27  [2]   Reid-Ashman requests that the Court take judicial notice of these facts pursuant to FRE 201.
      A true and correct copy of the '996 Patent is at Exhibit A to Reid-Ashman's complaint filed
28      herein.

1   *Textron, Inc.*, 48 F.3d 1172, 1184 (Fed.Cir. 1995).  Accordingly, Swanson's over-inclusion

2   allegation adds nothing, and its affirmative defense of inequitable conduct before the PTO must be

3   stricken.

4        Finally, Swanson is required to provide the details *now*, at the pleading stage, not later.  *In*

5   *re Papst Licensing, GmbH Patent Litigation*, 174 F.Supp.2d 446, 449 (E.D.La. 2001) (rejecting

6   IBM's argument that, through discovery, it would likely uncover additional facts to support its

7   affirmative defense of inequitable conduct before the PTO).  Swanson's failure to plead with

8   particularity as required by FRCP 9(b) is fatal, especially given that the SAC represents

9   Swanson's third try at fashioning a cognizable inequitable conduct defense.

10              **3.       The Fourth Affirmative Defense (Unclean Hands) (SAC,**
                          **pp.5 ¶4)**
11
                    **a.       The Fourth Affirmative Defense Sounds in Attempted**
12                            **Monopolization, Not Unclean Hands**

13       Although Swanson styles this affirmative defense as "unclean hands so as to render the

14   "996 Patent unenforceable," what Swanson specifically alleges is that  Reid-Ashman "is

15   *attempting* to enforce the patent beyond the scope of the patent *to obtain a monopoly* in the test

16   head manipulator industry."  SAC, 5:9 (emphasis added).  It is the substance of a party's

17   pleadings, not the name or title employed, that controls the issues to be adjudicated.  *Briggs v.*

18   *State of Oklahoma*, 2007 U.S.Dist. LEXIS 7091, *11 (W.D.Okla. 2007); *McNair v. City of Cedar*

19   *Park*, 993 F.2d 1217, 1220 (5th Cir. 1993); *Conn v. United States*, 366 F.2d 1019, 1021 (Ct.Cl.

20   1966).  Accordingly, the issue before the Court on this motion is whether Swanson has adequately

21   pleaded a cause of action for attempted monopolization.  It has not.

22       The elements of attempted monopolization in violation of Section 2 of the Sherman Act,

23   15 U.S.C. § 2, are: (1) a specific intent to control prices or destroy competition in the relevant

24   market, (2) predatory or anticompetitive conduct directed to establishing this unlawful purpose,

25   and (3) a dangerous probability of success.  *Cascade Cabinet Co. v. Western Cabinet & Millwork,*

26   *Inc.*, 710 F.2d 1366, 1373 (9th Cir. 1983).  "Test head manipulator industry" is not adequate to

27   define the relevant market because, *inter alia*, it does not describe the geographic scope.  More

28   significant, Swanson does not allege a dangerous probability of success.  A patent "owner may be

found to have abused the grant and may become liable for antitrust violations *when sufficient power in the relevant market is present.*"  *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1576 (Fed. Cir. 1990) (emphasis added); *Grid Systems, Inc. v. Texas Instruments Inc.*, 771 F.Supp. 1033, 1041 (N.D.Cal. 1991).  Here, Swanson has not alleged market power.  Accordingly, the fourth affirmative defense must be stricken.

### b.   Even if Construed as Sounding in Patent Misuse the Fourth Affirmative Defense Fails

In theory, there may be conduct which in some respects falls short of an antitrust violation but still constitutes patent misuse.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 140 (1969).  However:

> If misuse claims are not tested by conventional antitrust principles, by what principles shall they be tested?  Our law is not rich in alternative concepts of monopolistic abuse; and it is rather late in the day to try to develop one without in the process subjecting the rights of patent holders to debilitating uncertainty.

*USM Corp. v. SPS Tech., Inc.*, 694 F.2d 505, 512 (7th Cir. 1982, J. Posner).  The only thing that is clear is that such conduct would have to exceed the bounds of 35 U.S.C. § 271(d)(3), and Swanson cannot validly allege that Reid-Ashman is attempting to enforce its patent against non-infringing products unless and  until it prevails in defeating Reid-Ashman's patent infringement suit.  *See Visto Corp. v. Sproqit Tech.*, 360 F.Supp.2d 1064, 1072 (N.D.Cal. 2005); *Elantech Devices Corp. v. Synaptics, Inc.*, 2006 U.S.Dist. LEXIS 48756, *2 (N.D.Cal. 2006).

### 4.   The Counterclaim for "Declaration of Invalidity, Noninfringement and Unenforceability of the '996 Patent and Patent Misuse" (SAC, pp.5-7 ¶¶1-6)

The essential allegations of Swanson's declaratory relief counterclaim are substantively indistinguishable from Swanson's first, third and fourth affirmative defenses, which must be stricken for the reasons discussed above.  However, "if any affirmative defense is stricken, then a related counterclaim cannot state a claim based on that defense." *Advanced Cardiovascular Systems*, 41 U.S.P.Q.2d at 1775.  Accordingly, Swanson's declaratory relief counterclaim must be dismissed.

SV #284794 v4

-11-

Notice of Motion and Motion to Strike Affirmative Defenses and to Dismiss Counterclaims, etc.
Case No. C 06–04693 JCS

**5.**   **The Counterclaim for "Product Disparagement, False Advertising and Unfair Competition in Violation of ¶43(a) of the Lanham Act" (SAC, pp.13-14 ¶¶36-48)**

Swanson's Lanham Act § 43(a) counterclaim is barred by federal patent law.  In *Zenith Elects.*, 182 F.3d at 1352 the Federal Circuit "consider[ed] the potential conflict between the patent laws and the federal proscription against unfair trade practices contained in the Lanham Act," and concluded:

> [B]efore a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith.  This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith.

*Id.* at 1353.  *See also Noble Fiber Technologies, LLC v. Argentum Medical, LLC*, 2006 U.S.Dist. LEXIS 43357, *15 (M.D.Pa. 2006), quoting *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F.Supp.2d 489, 504 (D.Del. 2003) ("Absent bad faith, there can be no violation of the Lanham Act in such a context because a patent holder is entitled to enforce its rights, which include threatening alleged infringers with suit.").

Swanson has not adequately pleaded bad faith.  Although Swanson repeats the mantra of "bad faith," in the patent enforcement context bad faith must be pleaded with particularity in accordance with FRCP 9(b).  *Noble Fiber* *16; *Chiron*, 156 F.R.D. at 220.  Swanson's allegations of bad faith are mere conclusions which fail to identify the speaker and provide the time, place and content details required by FRCP 9(b).  Further, most of Swanson's allegations are made on information and belief: *e.g.*, the "veiled threat" to sue Texas Instruments (p.10 ¶ 27, p.12 §35, p.15 ¶¶51, 52); that Reid-Ashman informed Texas Instruments of this lawsuit (p.10 ¶26); that Swanson "stole" Reid-Ashman's design (p.10 ¶26); that Reid-Ashman would "crush" Swanson (p.8 ¶14); that Reid-Ashman said it didn't need more competition (p.10 ¶26).  Such allegations made on information and belief do not satisfy FRCP 9(b) requirements.  *County of Santa Clara v. Astra United States, Inc.*, 428 F.Supp.2d 1029, 1036 (N.D.Cal. 2006).  *See also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Accordingly, Swanson's Lanham Act § 43(a) counterclaim is barred by federal patent law and must be dismissed.

### 6. The State-Law Business Tort Counterclaims (SAC, pp. 14-17 ¶¶49-68)

Swanson pleads state-law business torts which it labels as:

- Tortious Interference with Ongoing Business Relations and Prospective Economic Advantage,
- Slander, and
- Trade Libel or Business Disparagement.

As discussed *supra* all of these counterclaims are barred by the applicable statutes of limitation to the extent that they are based on the alleged July 2003 "crush" statement.  In addition:

### a. All of the  State-Law Counterclaims Are Preempted by Federal Patent Law

Federal patent law preempts state-law tort liability for a patent owner's good-faith assertion of its patent and warning about litigation.  A patent owner may not be denied relief or subjected to liability for seeking to enforce its patent rights against infringement.  35 U.S.C. § 271(d)(3); *Zenith Elecs.*, 182 F.3d at 1355.

As discussed above in connection with Swanson's Lanham Act counterclaim, Swanson has failed to adequately allege bad faith.  Swanson does not adequately plead any evidentiary facts to support its conclusion (SAC at p.10 ¶ 28, p.15 ¶52) that Reid-Ashman's patent infringement action is "baseless."  Swanson has the cart before the horse in that it cannot prevail on its business tort claims unless and until it prevails in defeating Reid-Ashman's patent infringement suit.  *See Visto*, 360  F.Supp.2d at 1072; *Elantech* 2006 U.S.Dist. LEXIS 48756, *2 ("[Accused infringer] cannot plead around preemption and allege that [patent owner's] infringement allegations were 'objectively baseless' until [patent owner's] infringement claims are resolved.")

Statements of intent such as "they will crush him" and "we don't need another competitor" add nothing, as this Court held in *Visto*.  Allegations of  "lawful conduct … motivated by a black desire to hurt [a competitor]'s business does not necessarily constitute wrongful conduct."  *Visto*,

SV #284794 v4

-13-

Notice of Motion and Motion to Strike Affirmative Defenses and to Dismiss Counterclaims, etc.
Case No. C 06–04693 JCS

360 F.Supp.2d at 1067.  These basic principles apply here.

**b.      The Statements Attributed to Reid-Ashman Are
Absolutely Privileged Under the California Litigation
Privilege**

In addition, the statements which Swanson attributes to Reid-Ashman are absolutely
privileged under California's litigation privilege.[3]  Communications made in or related to judicial
proceedings are absolutely immune from tort liability under California law.  Cal.Civ.Code § 47(b).
The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by
litigants or other participants authorized by law; (3) to achieve the objects of the litigations; (4)
that have some connection or logical relation to the action.  *Shaper Image Corporation v. Target
Corporation*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing *Silberg v. Anderson*, 50 Cal. 3d
205, 212 (1990)).

Courts have applied the litigation privilege to all torts, with the exception of actions for
malicious prosecution.  *Visto*, 360 F.Supp.2d at 1068, 1071;  *Sharper Image*, 425 F. Supp. 2d
1056, 1077 (N.D.Cal. 2006).  "Any doubt as to whether the privilege applies is resolved in favor
of applying it."  *Id.* (citing *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (2002)).

Finally, the litigation privilege applies to prelitigation communications as well as those
occurring during the course of actual litigation.  *Visto*, 360 F.Supp.2d at 1068.

With the sole exception of the July 2003 "crush" statement (which is plainly time-barred
on the basis of Swanson's own allegations) all of the statements which Swanson attributes to Reid-
Ashman were made in connection with this action and thus are absolutely privileged under
California Civil Code § 47(b).

**c.      Swanson's Counterclaim for "Tortious Interference with
Ongoing Business Relations and Prospective Economic
Advantage" is Preempted by Federal Patent Law, Barred
by the California Litigation Privilege and Fails as a
Matter of State Law**

This counterclaim fails as a matter of state law.  As to "Ongoing Business Relations," there
must be an actual, existing contract between Swanson and a third party such as Texas Instruments,

---

[3]      Except for the July 2003 "crush" statement, any action on which is barred by the applicable
statutes of limitation.

but Swanson has failed to identify such an existing contract, but instead artfully pleads "an economic relationship with TI with the probability of future economic benefit to Swanson" (SAC, p.15 ¶53).  That is not specific enough to establish an actual, existing contract nor to give Reid-Ashman fair notice as required by FRCP 8.  Under California law, the tort of intentional interference with existing contractual relations requires (1) a valid contract between Swanson and a third party; (2) Reid-Ashman's knowledge of the contract; (3) actions by Reid-Ashman designed to induce a breach of disruption of the contractual relationship; (4) actual breach of disruption of the contractual relationship; and (5) resulting damage.  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).  Similarly, under Texas law, the tort requires (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss.  *Prudential Insurance Co. of America v. Financial Review Services*, 29 S.W.3d 74, 77-78 (2000).  Thus, under either California or Texas law, Swanson has failed to plead the tort of interference with an existing contract.

As to "Prospective Economic Advantage," Swanson's counterclaim must be dismissed because Swanson has failed to adequately plead that the Reid-Ashman's alleged interference was independently wrongful – that is, wrong by some measure beyond the fact of the interference itself.  *Visto*, 360 F.Supp.2d at 1066-67; *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal.4th 376, 393 (1995); *Texas Disposal System Landfill v. Waste Management Holdings*, 2005 Tex. App. LEXIS 4898, 27-28 (2005).  "The focus for determining the wrongfulness of the defendant's intentional acts 'should be on the defendant's objective conduct, and evidence of motive or other subjective states of mind is relevant only to illuminating the nature of that conduct."  *Sebastiani Int'l, Inc. v. Russolillo*, 128 F.Supp.2d 630, 637 (C.D.Cal. 2001) (quoting *Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co.*, 47 Cal.App.4th 464, 477 (Cal.App. 1996)).  Here, the only objective conduct that Swanson has pointed to is Reid-Ashman's enforcement of its rights under a presumptively valid patent.  There is simply nothing independently wrong with such conduct.  Statements attributed to Swanson such as "they will crush him" (SAC, p.8 ¶ 14), Swanson "stole" manipulator designs (SAC, p.10 ¶ 26) and "we don't need another competitor" (SAC, p.10 ¶ 26) are evidence (at most) of "motive or other subjective states of mind" rather than Reid-Ashman's

1   objective conduct.  Lawful conduct that is "motivated by a black desire to hurt the plaintiff's

2   business" does not necessarily constitute wrongful conduct.  *Visto*, 360 F.Supp.2d at 1067.  All

3   that Reid-Ashman has done is stand on its rights as the owner of a presumptively valid issued

4   United States patent.  There is nothing objectively wrong with such conduct.

5              **d.    Swanson's Counterclaims for "Slander" and "Trade**
                       **Libel or Business Disparagement" Are Preempted by**
6                      **Federal Patent Law and  Barred by the California**
                       **Litigation Privilege**
7

8              As discussed above, state-law business torts such as these are preempted by federal patent

9   law unless the accused infringer can plead bad faith in accordance with FRCP 9(b), and Swanson

10  has failed to do so.

11             In addition, the factual predicate for these counterclaims -- the statement attributed to Reid-

12  Ashman that Swanson "stole" Reid-Ashman's manipulator design -- was made in a

13  communication that had "some connection or logical relation to the action" ( *Sharper Image*, 425

14  F.Supp.2d at 1077; *Silberg*, 50 Cal.3d at 212) and is thus absolutely privileged under California

15  Civil Code § 47(b).  Swanson's alleges that "TI had told Swanson that TI had been informed in

16  person by multiple representatives of RAM that Swanson had 'stolen the design of the RAM's

17  manipulator' and that RAM was in the process of pursuing legal action against Swanson."  (SAC

18  at p.10 ¶26.)  Thus, the statement about Swanson stealing the design explained a reason for the

19  litigation, which is "connected" with and has a "logical relation" to the litigation.

20  **III.    CONCLUSION**

21             Reid-Ashman is the owner of a duly granted patent, and the law recognizes a presumption

22  that the assertion of a duly granted patent is made in good faith.  This presumption is overcome

23  only by affirmative evidence of bad faith, which evidence must be pleaded with particularity under

24  the standard set forth in FRCP 9(b).  Swanson's affirmative defense and counterclaim allegations

25  are entirely conclusory and do not come close to meeting the standards required to overcome the

26  presumption that Reid-Ashman's action constitutes a good-faith effort to enforce a valid patent.

27  Accordingly, Swanson's first, third and fourth affirmative defenses must be stricken, and all of its

28  counterclaims must be dismissed with prejudice, as Swanson has already amended its answers and

1  ///

2  ///

3  ///

4  ///

5  counterclaims twice in response to Reid-Ashman's previous motion to strike/dismiss Swanson's

6  original answer and counterclaims.

7  Dated:  March 8, 2007                    THELEN REID BROWN RAYSMAN & STEINER LLP

8

9                                    By:_____/s/  Dean A. Morehous_____
                                          Dean A. Morehous
10                                        David B. Ritchie
                                          W. Samuel Niece
11                                        Christopher L. Ogden
                                          THELEN REID BROWN RAYSMAN & STEINER LLP
12
                                          Attorneys for Plaintiff
13                                        REID-ASHMAN MANUFACTURING, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28