UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REID-ASHMAN MANUFACTURING, INC., | No. C-06-4693 JCS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AFFIRMATIVE DEFENSES AND TO DISMISS COUNTERCLAIMS FROM SWANSON'S "SECOND AMENDED ANSWER TO COMPLAINT; AFFIRMATIVE DEFENSES; COUNTERCLAIMS" [Docket No. 67]** |
| v. | |
| SWANSON SEMICONDUCTOR SERVICE, L.L.C., | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Reid-Ashman Manufacturing, Inc. ("Reid-Ashman") filed this action against Defendant Swanson Semiconductor Service, L.L.C. ("Swanson"), alleging that Swanson offers for sale and sells test head manipulators that infringe Reid-Ashman's patent rights. Swanson, in turn, has asserted various affirmative defenses and counterclaims. Before the Court is Reid-Ashman's Motion to Strike Affirmative Defenses and to Dismiss Counterclaims from Swanson's "Second Amended Answer to Complaint; Affirmative Defenses; Counterclaims" ("the Motion"). In the Motion, Reid-Ashman asks that the Court strike several of Swanson's affirmative defenses on the basis that they do not, as currently pled, provide adequate notice under Rules 8 and 9(b) of the Federal Rules of Civil Procedure. Reid-Ashman further asserts that the counterclaims should be dismissed, both under Rules 8 and 9(b) and under Rule 12(b)(6) for failure to state a claim. A hearing on the Motion was held on Friday, May 4, 2007, at 9:30 a.m. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND[1]

### A. The Second Amended Answer to Complaint; Affirmative Defenses; Counterclaims

In its Second Amended Answer to Complaint; Affirmative Defenses; Counterclaims ("Answer and Counterclaims"), Swanson asserts four affirmative defenses, all "on information and belief." First, Swanson asserts that the patent in suit, U.S. Patent No. 6,766,996 ("the '996 Patent"), is "invalid for failing to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, 112 and 132." Answer and Counterclaims at 4, ¶ 1. Second, Swanson asserts that damages are barred based on Reid-Ashman's failure to properly mark its goods pursuant to 35 U.S.C. § 287(a). Third, Swanson asserts that the '996 Patent is unenforceable because Reid-Ashman engaged in inequitable conduct before the PTO when it obtained the '996 Patent. *Id.*, ¶ 3. Fourth, Swanson asserts that Reid-Ashman is "guilty of unclean hands so as to render the '996 Patent unenforceable against Swanson in this action." *Id.* at 5, ¶ 4.

In support of the inequitable conduct affirmative defense, Swanson alleges that Reid-Ashman:

> . . . engaged in inequitable conduct before the [PTO] when it obtained the '996 Patent, as [Reid-Ashman] withheld material information known to [Reid-Ashman] from the [PTO], with an intent to deceive the [PTO] into issuing the '996 Patent. More specifically, [Reid-Ashman] failed to disclose its own [Reid-Ashman] US 1004 Test Head Manipulator Brochure for the LTX TH90/TH91 Test Head (copyright 1985) . . . and the [Reid-Ashman] OH 1510 Product Manual (dated February 4, 2000) . . . and their related products, to the [PTO]. This failure to disclose [Reid-Ashman's] own known prior art, which was more pertinent than any other prior art of record, constitutes a fraud on the [PTO], which renders [Reid-Ashman's] '996 Patent invalid and/or unenforceable against Swanson. Further, to the extent that [Reid-Ashman] filed a large number of prior art references in its attempts to obfuscate and hide the most relevant references (U.S. Patent Nos. 5,606,262 and 5,931,048), such actions also render [Reid-Ashman's] '996 Patent invalid and/or unenforceable.

---

[1] A detailed description of the allegations in Reid-Ashman's complaint is set forth in the Court's November 13, 2006 Order in this case. The Court, therefore, addresses here only Swanson's affirmative defenses and counterclaims.

2

*Id*. at 4-5, ¶ 3.

In support of the unclean hands affirmative defense, Swanson alleges that Reid-Ashman is:

> . . . attempting to enforce the patent beyond the scope of the patent to obtain a monopoly in the test head manipulator industry by claiming patent infringement against a product that is not even in the same class as that patented by [Reid-Ashman]. Swanson's manipulator product handles much lighter test head loads. [Reid-Ashman] is well aware of that fact. [Reid-Ashman] also initiated this litigation without adequate investigation whether Swanson's product infringes [Reid-Ashman's] patent; indeed, [Reid-Ashman] did not even contact Swanson about the patent or the subject matter of this litigation prior to serving a copy of the Complaint on Swanson. [Reid-Ashman] then communicated its invalid claims outside the litigation to intimidate and confuse Swanson's existing and potential customers, so as to eliminate this source of revenue to Swanson.

*Id*. at 5, ¶ 4.

Swanson also asserts a counterclaim for a declaratory judgment of invalidity, noninfringement and unenforceability and patent misuse as to the '996 Patent, alleging that Reid-Ashman's patent infringement claims against Swanson are "a sham, are frivolous, and are an obvious attempt to drive legitimate competition from the marketplace by improper assertion of the '966 Patent." *Id*. at 5, ¶ 1. In support of this allegation, Swanson repeats the key allegations of the affirmative defenses discussed above, namely, that Reid-Ashman obtained the patent through inequitable conduct, that it is guilty of unclean hands, and that the '996 Patent is "invalid for failing to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, specifically 35 U.S.C. §§ 102, 103, 112, and 132." *Id*. at 6-7, ¶¶ 3-6.

In addition to Swanson's counterclaim for declaratory relief, Swanson asserts four additional counterclaims: 1) product disparagement, false advertising and unfair competition in violation of § 43(a) the Lanham Act ("the Lanham Act Counterclaim"); 2) tortious interference with ongoing business relations and prospective economic advantage; 3) slander; and 4) trade libel and business disparagement.

The Lanham Act claim is based on the allegation that Reid-Ashman, in an effort to prevent Swanson's sale of test head manipulators to Texas Instruments and to sell its own manipulators to Texas Instruments, told Texas Instruments that Swanson had "stolen" Reid-Ashman's manipulator design. *Id*. at 13, ¶ 39. Specifically, Swanson alleges that on July 27, 2007, it was informed that

"[Reid-Ashman] principals were claiming that 'Swanson stole manipulator designs of [Reid-Ashman] . . . and that [Reid-Ashman] was in the process of legal action against Swanson.'" *Id*. at 10, ¶ 26. Swanson further alleges that in September 2006, when a third party stated to Reid-Ashman's president, Steve Reid, that he understood Reid-Ashman was suing Swanson, Reid responded, "We . . . do not need another competitor." *Id*. Elsewhere in the Answer and Counterclaims, Swanson alleges that at a July 2003 trade show in San Jose, principals of Reid-Ashman, including Claire Buchanan, said that Reid-Ashman would "crush" Swanson. *Id*. at 8, ¶ 13.

The counterclaim for tortious interference is based on the allegation that Reid-Ashman has been contacting and continues to contact Swanson customers, including Texas Instruments, claiming that Swanson has infringed Reid-Ashman's patent and making "veiled threats" to sue these prospective customers if they purchase Swanson's manipulator. *Id*. at 14- 15, ¶¶ 50-51. According to Swanson, these threats are made in bad faith and with malice, and without a good faith intent to actually initiate litigation against these potential customers. *Id*., ¶ 52. Swanson alleges further that in making these threats, Reid-Ashman has interfered with Swanson's relationships with prospective customers, including Texas Instruments, that Reid-Ashman was aware of the relationship with Texas Instruments, and Reid-Ashman's intentional interference has resulted in actual damage to Swanson. *Id*. Swanson alleges that the tortious interference is not privileged because it is "composed at least in part of communications to third parties not made in the course of, and/or not made in conjunction with, pending or reasonably anticipated litigation." *Id*., ¶ 55.

Swanson's counterclaims for slander and for trade libel or business disparagement are based on the allegation that Reid-Ashman told Texas Instruments that Swanson stole Reid-Ashman's manipulator design. *Id*. at 16-17, ¶¶ 57, 62. Swanson asserts that the alleged slander and trade libel or business disparagement, like the alleged tortious interference, is not privileged because it is "composed at least in part of communications to third parties not made in the course of, and/or not made in conjunction with, pending or reasonably anticipated litigation." *Id* at 16-17, ¶¶ 60, 68.

**B.     The Motion**

Reid-Ashman asserts that all of Swanson's affirmative defenses, except the affirmative defense for failure to mark in violation of 35 U.S.C. § 287(a), and all of Swanson's counterclaims

4

fail as a matter of law because they are supported by insufficient factual allegations. Reid-Ashman makes the following specific arguments:

**Invalidity Affirmative Defense:** Swanson's invalidity affirmative defense is based entirely on the allegation that the claims of the '996 Patent are invalid because they fail to meet "one or more of conditions for patentability" specified in §§ 102, 103, 112, and 113. In failing to allege any specific facts or identify which of the requirements of these sections have been violated, Swanson fails to provide Reid-Ashman with adequate notice of the defense asserted.

**Inequitable Conduct Affirmative Defense:** Swanson's inequitable conduct affirmative defense is based on allegations that Reid-Ashman failed to provide the PTO with two documents revealing prior art *and* that it obfuscated the most relevant prior art by listing too much prior art in its application. As to the first theory, Reid-Ashman asserts that the allegations fail because they do not meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which Reid-Ashman asserts is the applicable standard. Specifically, Swanson must identify not only the documents that allegedly were not disclosed but also the precise content of the alleged fraudulent omissions as well as how the omissions were material. Reid-Ashman further asserts that Swanson must allege facts showing that Swanson intended to mislead the PTO. As to the second theory, Reid-Ashman asserts that court's have routinely rejected claims of inequitable conduct based on disclosure of too much prior art.

**Unclean Hands Affirmative Defense:** Swanson's unclean hands affirmative defense is based on the allegation that Reid-Ashman has attempted to monopolize the marketplace. This affirmative defense, Reid-Ashman argues, is really an attempt to bring a claim for attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2. Reid-Ashman asserts that Swanson has not alleged key elements of such a claim, including a relevant market or a "dangerous probability of success." Therefore, Reid-Ashman argues, the affirmative defense should be stricken. Even if the unclean hands is construed as an allegation of patent misuse, such a claim could only be successful if Swanson were first to establish that it was not infringing Reid-Ashman's patent.

**Declaratory Relief Counterclaim:** The declaratory relief counterclaim is based on the three affirmative defenses discussed above and should be dismissed for the reasons discussed above.

5

**Lanham Act Counterclaim:** Reid-Ashman asserts that a Lanham Act claim for unfair trade practices may only be brought in the context of patent infringement where there is bad faith and further, that bad faith must be pleaded with particularity. Reid-Ashman argues further that Swanson has not pleaded bad faith with particularity because it has not identified the speaker or the time and place of the various statements which allegedly show bad faith, and most of the specific allegations were made on information and belief.

**The State Law Tort Claims for Tortious Interference with Ongoing Business Relations and Prospective Economic Advantage, Slander and Trade Libel or Business Disparagement:** With respect to all three of the state law tort claims, Reid-Ashman asserts that they are preempted to the extent that Reid-Ashman's assertion of the patent and warnings about litigation are made in good faith. Reid-Ashman asserts that Swanson's allegations of bad faith are insufficient (as discussed in connection with the Lanham Act counterclaim) and further asserts that Swanson cannot "plead around" the federal preemption until the infringement claims are resolved. Reid-Ashman also argues that all of the state law tort claims fail because they are based on statements that are absolutely privileged under California's litigation privilege, Cal. Civ. Code § 47(b). Further, to the extent the state law claims are based on the statement made in 2003 that Reid-Ashman would "crush" Swanson, the claims are, Reid-Ashman asserts, barred by the relevant statutes of limitations. Finally, as to the claims for intentional interference with ongoing business relations and with prospective economic relations, Reid-Ashman asserts the claim fails as a matter of law because there is no contract alleged and because the alleged interference – Reid-Ashman's enforcement of its patent rights – is not independently wrongful.

**C.    The Opposition**

In its Opposition, Swanson argues the inequitable conduct affirmative defense and the declaratory relief counterclaim based on inequitable conduct are legally sufficient. First, Swanson argues that its allegations of inequitable conduct are sufficient because this affirmative defense and counterclaim is governed by Rule 8 of the Federal Rules of Civil Procedure, requiring only notice pleading, rather than Rule 9(b). Further, Swanson asserts that even if Rule 9(b) applies, its allegations are sufficiently specific. With respect to the sufficiency of the bad faith allegations,

1 Swanson asserts that its allegations were sufficiently detailed and specific. As to the tortious
2 interference claim, Swanson asserts that it has alleged an existing relationship between itself and
3 Texas Instruments and further, that the alleged interference is independently wrongful because it
4 constitutes a violation of § 43(a) of the Lanham Act.

5 With respect to the Litigation Privilege, Swanson asserts that it does not apply because the
6 communications at issue were not made "in a judicial proceeding" as required under Cal. Civ. Code
7 § 47(b) but rather, were made *about* the judicial proceeding to third parties. Swanson asserts that
8 under these circumstances, the only privilege that might apply is the interested person privilege of
9 Cal. Civ. Code § 47(c), which requires that communications be made without malice. Here,
10 however, malice is alleged, depriving Reid-Ashman of any privilege. Finally, as to the 2003
11 statement that Reid-Ashman would "crush" Swanson, Swanson states that this statement was not
12 alleged to be the basis of any of the claims and thus, its timeliness is not at issue. Rather, this
13 allegation was merely intended to show Reid-Ashman's long-standing bad faith as to Swanson.

### III. ANALYSIS

#### A. Legal Standard

A claim should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal can be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

### A. Invalidity Affirmative Defense

Swanson alleges that the '996 Patent is "invalid for failing to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, 112 and 132." Answer and Counterclaims at 4, ¶ 1. Even under the minimal notice pleading requirements of Fed. R. Civ. P. 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," this allegation is insufficient because it does not provide Reid-Ashman with sufficient notice of the defense being asserted. *See Advanced Cardiovascular Sys., Inc. v. Medtronic*, 41 U.S.P.Q.2d 1770, 1773 (N.D. Cal. 1996) (holding that where affirmative defense of invalidity was based on allegation that patent holder failed to "satisfy the requirements of patentability contained in Title 35 [of the] United States Code, including but not limited to, sections 101, 102, 103, and/or 112," it did not give the plaintiff fair notice of the defense because the sections identified "provide numerous grounds for finding a patent invalid"). Accordingly, Swanson's affirmative defense is stricken without prejudice and Swanson is given leave to amend its invalidity affirmative defense.

### B. Inequitable Conduct Affirmative Defense

#### 1. The Alleged Failure to Reveal Two Publications

Swanson alleges inequitable conduct based on Reid-Ashman's failure to provide the PTO with two, specifically identified publications with an intent to deceive. However, Swanson does not explain how these omissions were material – an element that it will be required to prove in order to prevail on this defense. *See Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1351 (Fed. Cir. 2002) (to prevail on unclean hands affirmative defense, defendant was required to show that plaintiff "withheld material information from the PTO with intent to deceive the PTO"). Reid-Ashman asserts that the affirmative defense is, therefore, insufficiently pleaded, because Rule 9(b), requiring that fraud be pleaded with particularity, applies to allegations of inequitable conduct. Swanson, on the other hand, asserts that Rule 9(b) does not apply to inequitable conduct and that the many district courts that have held to the contrary have erred. The Court concludes that inequitable conduct must be pleaded with specificity under Rule 9(b) and that Swanson's allegations of inequitable conduct fail to meet that standard.

1  In its Opposition, Swanson addressed whether inequitable conduct allegations are governed
2  by Rule 9(b) or Rule 8, an issue that had not been resolved by the Federal Circuit. After Swanson
3  filed its Opposition, however, the Federal Circuit squarely held in *Central Admixture Pharmacy*
4  *Services, Inc. v. Advanced Cardiac Solutions* that: 1) the law of the Federal Circuit applies to the
5  question of whether inequitable conduct has been adequately pleaded; and 2) inequitable conduct
6  must be pled with particularity. 2007 WL 967936 (Fed. Cir. April 3, 2007). This Court is bound by
7  the ruling in *Central Admixture* and therefore applies Rule 9(b) in evaluating Swanson's allegations
8  of inequitable conduct. Applying that standard, the Court determines that Swanson's allegations are
9  insufficient because Swanson has failed to identify with particularity facts showing that the alleged
10 omissions were material or that Reid-Ashman's omission was done with an intent to deceive. *See*
11 *Energy Absorption Sys., Inc. v. Roadway Safety Servs., Inc.*, 1993 WL 389014 ( N.D. Ill. Sept. 16,
12 1993) (holding that inequitable conduct affirmative defense was not adequately pled under Rule 9(b)
13 because the defendant failed to explain how omission was material). Therefore, this affirmative
14 defense is stricken without prejudice to the extent it is based on the alleged omissions discussed
15 above and Swanson is given leave to amend.

### 2.  **Obfuscation through Provision of Too Much Prior Art**

Reid-Ashman also argues that Swanson's inequitable conduct affirmative defense should be stricken because it fails as to the allegation that the most pertinent references were buried among too much prior art in order to hide it from the PTO. Reid-Ashman cites a single case, in which the district court declined to find inequitable conduct in similar circumstances. *See Litton Sys., Inc. v. Honeywell, Inc.*, 1995 WL 366 468 (C.D. Cal. Jan. 6, 1995). In that case, however, the court decided the issue based on the evidence, not the pleadings. *Id.* at * 37. Further, the court acknowledge that inequitable conduct may be established based on such allegations:

> Some cases have held that it was inequitable conduct to bury the most pertinent references within a large list of less pertinent references, particularly if the circumstances are such that the examiner would not carefully examine the art in the list. *e.g. Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co. Inc.,* 24 U.S.P.Q.2d (BNA) 1801, 1827 (N.D. Ind. 1992), *aff'd w'out op.,* 11 F.3d 1072 (Fed Cir. 1993), *cert. denied,* 114 S. Ct. 2136 (1994) ("it is ... a violation of the duty of candor and fair dealing with the Patent Office for an applicant or its attorney to disclose a pertinent prior art patent reference to the

9

> examiner in such a way as to 'bury' it or its disclosures in a series of disclosures of less relevant prior art references, so that the examiner would be likely to ignore the entire list and permit the application to issue."); *Penn Yan Boats, Inc. v. Sea Lark Boats, Inc.,* 175 U.S.P.Q. (BNA) 260, 272 (S.D. Fla. 1972), *aff'd* 178 U.S.P.Q. (BNA) 577 (5th Cir. 1973), *cert. denied,* 414 U.S. 874 (1973) (applicant who submitted list citing non-pertinent prior art patents while omitting most pertinent known prior art patent misled the examiner to an extent sufficient to justify a finding of unenforceability).

*Id.* Therefore, at this early stage of the case, the Court declines to strike Swanson's allegation that Reid-Ashman is guilty of inequitable conduct before the PTO based on its provision of too many prior art references.

### C. Unclean Hands Affirmative Defense

Reid-Ashman asserts that Swanson's unclean hands defense is really a claim for attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 and that such a claim is insufficiently pleaded. At oral argument, Swanson stipulated that it does not seek to assert an affirmative defense under the Sherman Act and on that basis, the Court strikes the unclean hands affirmative defense, without leave to amend, to the extent it could be construed as being based on the a Sherman Act violation. The remaining question is whether Swanson has adequately asserted an unclean hands affirmative defense on a theory of patent misuse. The Court concludes that it has.

The Federal Circuit has held that in order to establish patent misuse based on a patent infringement action, it is necessary to establish bad faith and an improper purpose. *See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply*, 45 F.3d 1550, 1558 (Fed. Cir. 1995); *see also In re Indep. Serv. Orgs. Antitrust Litig.*, 964 F. Supp. 1479, 1484 (D. Kan. 1997) (holding that 35 U.S.C. § 271(d)(3) precludes a misuse defense based on litigation only when the patent infringement suit is brought in good faith) (citing *Glaverbel*). In addition, in order to avoid the immunity that is afforded antitrust litigants under the *Noerr-Pennington* doctrine, it is necessary to establish that the litigation is a "sham," i.e., that it is objectively baseless. *Glaverbel*, 45 F.3d at 1558 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993). The Court concludes that this is what Swanson is alleging as the basis for its unclean hands affirmative defense, although the various "magic words" of "bad faith," "improper purpose" and "objectively baseless" do not appear in the

10

defense itself. As discussed below, the Court concludes that Swanson has adequately alleged that Reid-Ashman's lawsuit was brought in bad faith and is objectively baseless.

Finally, Reid-Ashman cites to several cases in which judges have not permitted counterclaims for tortious interference based on an allegedly sham lawsuit until the defendant has established that the infringement claims in the underlying lawsuit are objectively baseless, ie., the defendant has already prevailed as to non-infringement. *See Elantech Devices Corp. v. Synaptics, Inc.,* 2006 U.S. Dist. LEXIS 48756 (N.D. Cal. July 7, 2006) (tortious interference claim based on patent infringement lawsuit premature); *Visto Corp. v. Sproqit Tech.*, 360 F. Supp. 2d 1064, 1072 (N.D. Cal. Mar. 17, 2005) (tortious interference claim based on patent infringement lawsuit premature); *Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 U.S. Dist. LEXIS 2968 (N.D. Cal. Feb. 6, 2001) (tortious interference claim based on trademark infringement lawsuit premature). Reid-Ashman suggests that under these cases, Swanson's affirmative defense of unclean hands – to the extent its defense is based on a theory of patent misuse – cannot be asserted until Swanson has defeated the infringement claims. The Court rejects this argument. To the extent Swanson asserts misuse as a *defense* to infringement, it makes little sense to hold that it cannot be asserted until *after* Swanson has already prevailed on the question of infringement. Further, in light of the fact that this issue will be litigated as part of the affirmative defense, it makes little sense to dismiss the state law counterclaims on this basis pending a determination on infringement.[2]

### D.   Declaratory Relief Counterclaim

Reid-Ashman asserts that the declaratory relief counterclaim should be dismissed for the same reasons that the affirmative defenses fail, invoking the rule that "if any affirmative defense is stricken, then the counterclaim cannot state a claim based on that defense." *Advanced Cardiovascular Sys., Inc. v. Medtronic*, 41 U.S.P.Q.2d at 1775. The Court's holding as to this claim incorporates the rulings discussed above, that is, the declaratory relief counterclaim fails to the extent that the affirmative defenses on which it is based fail and survives to the extent that the Court has found those affirmative defenses to be adequately pleaded. Swanson is given leave to amend.

---

[2] These rulings, of course, are without prejudice to further consideration of the matter in connection with the trial – either by adjusting the order and manner of proof or by bifurcation.

11

### E.   Lanham Act Counterclaim

Reid-Ashman asserts that Swanson's counterclaim for violation of the Lanham Act fails because such counterclaims, when asserted in the context of an action for patent infringement, are barred unless a defendant can establish that the patent infringement action is brought in bad faith. Reid-Ashman further asserts that bad faith must be pleaded with particularity and that Swanson has failed to do so. The Court concludes that while bad faith is a necessary element of Swansons Lanham Act Counterclaim, Swanson has sufficiently alleged bad faith to survive Reid-Ashman's motion.

In *Zenith Electronics Corp. v. Exzec, Inc.*, the Federal Circuit addressed the tension between the Lanham Act and the patent laws and concluded that to balance this tension, a requirement of bad faith should be read into claims brought under § 43 of the Lanham Act based on actions for patent infringement or related statements:

> Though the differences between the Lanham Act and the patent laws may not appear as sharp as those between the patent and antitrust laws, there is a tension. We have on several occasions recognized that a patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith. . . .This privileged right of a patentee to notify the public of its patent rights is statutorily rooted in the patent laws at 35 U.S.C. § 287, which authorizes patent holders to "give notice to the public" of a patent by marking its patented articles and makes marking or specific notice to the accused infringer a prerequisite to the recovery of damages. . . .   Accordingly, we conclude that, before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith. This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith

182 F.3d 1340, 1352 (Fed. Cir. 1999).

In *Zenith*, the defendant brought a counterclaim under § 43(a) of the Lanham Act based on statements by the plaintiff that the defendant's product infringed the plaintiff's patents and moreover, that the defendant could not manufacture a noninfringing product. *Id*. at 1354.  The Federal Circuit held that both statements, if made in bad faith, could be reached by § 43(a) of the Lanham Act. *Id*.  In addressing the bad faith requirement, the court noted that "what constitutes bad

12

faith remains to be determined on a case by case basis . . . [but that] [o]bviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Id*.

Swanson alleges that Reid-Ashman told Texas Instruments that Swanson was infringing Reid-Ashman's patent even though it knew that the patent was not being infringed. This allegation is supported by specific allegations that Swanson asserts show that Reid-Ashman acted in bad faith, including the allegation that: 1) Reid-Ashman "had never adequately inspected Swanson's manipulators prior to suit;" 2) the pictures Reid-Ashman took of Swanson's allegedly infringing product where unauthorized and were of the prototype rather than of the product; and 3) the product Reid-Ashman was offering in competition with Swanson's product "does not appear to be the same product which [Reid-Ashman] patented." Answer and Counterclaims at 10-11, ¶ 28. Swanson also alleges that Reid-Ashman principal Claire Buchanan stated in 2003 that Reid-Ashman would "crush" Swanson. *Id*. at 8, ¶ 14. This latter statement, while not itself actionable (as Swanson concedes), may, in combination with the other allegations, support a finding of subjective bad faith.[3]

The fact that many of Swanson's allegations are pleaded on information and belief does not persuade the court that a contrary result is justified. Although Reid-Ashman asserts that there is a bright line rule that allegations made on information and belief do not satisfy Rule 9(b), the Ninth Circuit case to which Reid-Ashman cites in support of this contention does not support its position. *See Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). In *Moore*, the Ninth Circuit held that the plaintiff failed to adequately plead claims of fraud asserted under Section 10(b) and Rule 10(b)(5) of the Securities Act of 1934. *Id*. at 540. The Court noted that many of the allegations in the complaint were made on information and belief and stated that "allegations of

---

[3] Because the Court concludes that Swanson's allegations of bad faith are specific enough to satisfy Rule 9(b), it need not reach the question of whether that is the appropriate standard. The Court notes, however, that there is some authority suggesting that Rule 9(b) does *not* apply to allegations of bad faith. *See Xilinx, Inc. v. Altera Corp.,* 33 U.S.P.Q.2d 1149 (N.D. Cal. 1993) (noting that the defendant's affirmative defense of unclean hands was based on the allegation that the plaintiff brought the patent infringement action in bad faith and thus, "Rule 9(b) does not technically apply"); *but see Formula One Licensing,* 2001 U.S. Dist. LEXIS at 2968 at * 5 (holding that antitrust claims based on filing sham patent litigation must be pleaded with particularity to show that the *Noerr-Pennington* doctrine does not apply).

13

fraud based on information and belief usually do not satisfy the particularity requirements under Rule 9(b)." The Court went on to explain, however, that the rule may be relaxed "as to matters within the opposing party's knowledge." *Id*. "In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded." *Id*. (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)). That standard is met here.

### F. State Law Claims

#### 1. Preemption by Federal Patent Law

Reid-Ashman asserts that Swanson's state law claims are preempted by patent law because Swanson has not adequately alleged bad faith. The Court disagrees.

The Federal Circuit has held that "state tort claims, including tortious interference claims, based on publicizing a patent in the marketplace are not preempted by the patent laws if the claimant can show that the patent holder acted in bad faith in its publication of the patent." *Zenith*, 182 F.3d at 1355. As discussed above, the Court concludes that Swanson has adequately alleged bad faith and therefore, its state law claims are not preempted as pleaded.

#### 2. Litigation Privilege

Reid-Ashman asserts that all of Swanson's state law counterclaims are barred under California's litigation privilege because these counterclaims are based on statements by Reid-Ashman that are related to its patent action against Swanson. The Court concludes that statements made after this lawsuit was initiated are subject to the litigation privilege but that fact questions remain as to the prelitigation statements.

California's litigation privilege is set forth in Cal. Civ. Code § 47(b), which provides as follows:

> A privileged publication or broadcast is one made:
>
> . . .
>
> (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . .

14

Cal. Civ. Code § 47(b). The litigation privilege is absolute and applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).

California courts have held that the litigation privilege may apply to prelitigation communications, *see Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d 573, 577 (1976), so long as the communications are made "in good faith and actual contemplation of litigation." *Visto*, 360 F. Supp. 2d at 1070 (citing *Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1374 (E.D. Cal. 1995). As the court in *Visto* explained, this may turn on a factual determination. For example, in *Visto*, the court found that there were factual questions as to whether prelitigation demand letters fell under the litigation privilege because the defendant's allegations raised the possibility that at the time the threats of litigation were made, the plaintiff was not seriously contemplating litigation in good faith but was instead using the threats for strategic reasons. *Id*.

The litigation privilege also may apply to communications to third parties with an interest in the litigation. *See, e.g., Sharper Image Corp. v. Target Corp*. 425 F. Supp. 2d 1056, 1077-78 (N.D. Cal. 2006) (holding that litigation privilege barred counterclaims asserted against plaintiff pursuing patent and trademark claims where the counterclaims were based on e-mails from plaintiff's attorneys to third parties who purchased the allegedly infringing product from the defendant informing them of the lawsuit and asking them not to carry the defendant's product).

Here, the statements at issue were allegedly made to Texas Instruments by Reid-Ashman, warning Texas Instruments that Reid-Ashman intended to sue Swanson, and possibly Texas Instruments as well, for patent infringement as to a product Texas Instruments was considering purchasing from Swanson. Answer and Counterclaims at 10, ¶¶ 26-27. Some of the statements that allegedly form the basis of the state law claims were made in late July, 2006, just before Reid-Ashman sued Swanson. *See id.* at ¶ 26. Other statements were made after the lawsuit was initiated. *Id*, ¶¶ 26-27. It is clear that the litigation privilege applies to the statements made *after* the lawsuit was initiated. As the court in *Sharper Image* explained, where a third party purchases a product that is the subject of an infringement action, a communication to that party informing it of the action has

a logical relation to the action because the third party clearly has an interest in the litigation. 425 F. Supp. 2d at 1079. In particular, the third party's supply of the product may be interrupted if the action is successful, and the third party may itself face legal liability if the product is found to infringe. *Id*. There remains a factual question, however, as to whether Reid-Ashman was seriously and in good faith contemplating litigation at the time it made the *prelitigation* statements on which Swanson's state law claims are based, as in *Visto*.

### 3. Sufficiency of Tortious Interference Allegations

Reid-Ashman asserts that Swanson's claim for tortious interference with ongoing business relations and prospective economic relations also fails on the grounds that Swanson had no existing contract and Swanson has not alleged that Reid-Ashman's conduct is independently wrongful. The first argument fails as it is evident from the Answer and Counterclaims that Swanson is not asserting a claim for intentional interference with contract but rather, a claim for intentional interference with prospective economic advantage. The remaining question is whether Swanson has adequately pleaded a claim for intentional interference with prospective economic advantage. The Court finds that it has.

In order to prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must establish the following elements:

> 1) an economic relationship between the plaintiff and third party containing the probability of future economic benefit to the plaintiff, 2) knowledge by the defendant of the existence of the relationship, 3) intentional acts on the part of the defendant designed to disrupt the relationship, 4) actual disruption of the relationship, and 5) damages to the plaintiff proximately caused by the acts of the defendant.

*Visto*, 360 F. Supp. 2d at 1067 (citing *Della Penna v. Toyota Motor Sales USA, Inc.*, 11 Cal. 4th 376, 389 (1995). In addition, "a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna*, 11 Cal. 4th at 393. California courts have held that independently wrongful conduct includes "actions which are independently actionable, violations of federal or state law or unethical business practices, e.g.,

16

1 violence, misrepresentation, unfounded litigation, defamation, trade libel or trade mark
2 infringement." *PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579, 602 (1996).

Here, Reid-Ashman does not dispute that the four basic elements for a tort of intentional interference with prospective economic advantage has been alleged. The only question remaining is whether the alleged conduct is "independently wrongful." The Court concludes that by alleging that Reid-Ashman has engaged in sham litigation, it has met this requirement. First, if proven, sham or baseless litigation would constitute a violation of the Lanham Act, as discussed above. Second, as noted above, unfounded litigation has been held by California courts to be independently wrongful. Therefore, this counterclaim is sufficiently pleaded.

## IV.   CONCLUSION

The Motion is GRANTED in part as follows: 1) Swanson's invalidity affirmative defense is stricken with leave to amend to identify the specific basis for the defense; 2) Swanson's inequitable conduct affirmative defense is stricken to the extent that it is based on an alleged failure to disclose prior art to the PTO; Swanson shall be granted leave to amend to allege facts showing materiality and intent to deceive; 3) Swanson's unclean hands affirmative defense is stricken, without leave to amend, to the extent it could be construed to assert a claim for attempted monopolization under the Sherman Act;  4) the declaratory judgment claim is stricken to the extent it is based on affirmative defenses that have been inadequately pleaded, namely, the invalidity affirmative defense and the inequitable conduct affirmative defense based on failure to disclose prior art to the PTO, with leave to amend; 5) the state law claims are dismissed with prejudice only to the extent they are based on alleged statements by Reid-Ashman to Texas Instruments or others made *after* this lawsuit was initiated regarding this lawsuit on the basis that these statements are protected under California's litigation privilege. In all other respects, the Motion is DENIED.

IT IS SO ORDERED.

Dated: May 10, 2007

_____
JOSEPH C. SPERO
United States Magistrate Judge